William E. WILLIS, II, Petitioner,

v.

**DEPARTMENT OF AGRICULTURE, Respondent.**

No. 97–3250.

United States Court of Appeals, Federal Circuit.

April 15, 1998.

Michael J. Carroll, Coppola, Sandre & McConville, P.C., Des Moines, IA, for Petitioner.

Elizabeth M. Hosford, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Respondent. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Kirk T. Manhardt, Assistant Director.

Before LOURIE, CLEVENGER, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

William E. Willis II (Willis) petitions for review of a final decision of the Merit Systems Protection Board (the Board), Docket No. SL–1221–96–0042–W–2. On February 25, 1997, the Board denied Willis's petition for review of an initial decision issued on August 2, 1996. In the initial decision, the Administrative Judge (AJ) dismissed Willis's Individual Right of Action (IRA), filed pursuant to the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (codified at various sections of 5 U.S.C. (1994)) (the WPA). The AJ's determination, that Willis failed to satisfy the WPA's jurisdictional prerequisites, was supported by substantial evidence and not contrary to law. We affirm.

## BACKGROUND

The facts of this case are set forth with great specificity in the AJ's opinion. Set forth below are only those facts necessary to resolve the issues presented on appeal. Willis was employed as a District Conservation-

ist (DC) with the United States Department of Agriculture (USDA) from 1973 until his retirement on June 11, 1993. As part of his duties, Willis was assigned to review farms for compliance with conservation plans approved by the USDA.[1] In 1992, Willis inspected 77 farms for compliance with USDA conservation plans and found 16 farms to be out of compliance. Of these 16 farms, seven appealed Willis's finding. The USDA Soil Conservation Service (SCS) granted the appeals of six of these seven farms, thereby reversing Willis's determination that the farms failed to comply with USDA conservation plans. The Area Office found that the farmers had met exceptions to strict compliance with the conservation plans due to unusual conditions, or the use of other acceptable conservation practices that resulted in similar savings in soil erosion. A later investigation conducted by the USDA Office of the Inspector General sustained the decision of the Area Office.

In a letter dated August 21, 1992, Willis was criticized by his supervisor, Mr. Erwin Aust (Aust), for a number of reasons, including problems in the quality reviews of Willis's office. Willis replied to the criticisms in a letter dated September 24, 1992, in which Willis objected to each of his supervisor's criticisms. Willis also accused Aust of harassing him. On November 10, 1992, Mr. Jeffrey Vonk (Vonk), Aust's immediate supervisor, conducted a meeting with Willis and Aust to address the poor working relationship between Willis and Aust. At various times, Willis expressed to Aust and to Vonk a desire to be transferred to another position.

In April 1993, the USDA announced a vacancy for the position of Area Resources Conservationist in Fairfield, Iowa, which is located some distance from Willis's then existing job location in Atlantic, Iowa. The series and grade of this position were the same as the DC position held at the time by Willis. On April 30, 1993, Willis rejected an offer to transfer to the Fairfield position. In a letter dated May 5, 1993, Vonk directed the reassignment of Willis to the Fairfield position against his wishes. Rather than accept the directed reassignment to the Fairfield position, Willis elected to initiate retirement proceedings. Before the paperwork finalizing Willis's retirement was completed, Willis met with Vonk, who informed Willis that he did not have to retire and could remain in his position in Atlantic as an alternative to the Fairfield position. Instead, Willis retired from service with the USDA effective June 11, 1993.

On July 19, 1993, Willis sent a letter to the Center for Resource Conservation (CRC) alleging that his supervisors manipulated rules in order to provide farmers with satisfactory conservation compliance determinations in reversing Willis's 1992 determinations. On July 22, 1993, Willis wrote a similar letter addressed to the Director of the Office of Personnel Management (OPM) in which he alleged various improper personnel actions arising from the reversals of his compliance determinations in 1992. Willis alleged that these improper personnel actions forced him to retire in 1993. On August 8, 1994, Willis sent a letter to the Office of Special Counsel (OSC) in which he requested an investigation of personnel actions taken against him beginning in 1986 and also requested a review of the 1992 reversals by SCS of the farms Willis found to be out of compliance with USDA conservation plans.

On October 30, 1995, unable to obtain satisfactory relief from the OSC, Willis filed an IRA appeal with the Board in which he

---

1. The Food Security Act (FSA) of 1985 and the Food, Agriculture, Conservation, and Trade Act of 1990 (FACTA) (codified at 16 U.S.C. §§ 3831 and 3834 (1994)) linked the receipt of farm subsidy payments to compliance with soil conservation plans approved by the USDA. The FSA/FACTA operated on two levels. First, the FSA/FACTA required farm operators and owners to prepare soil conservation plans for approval by the USDA. These conservation plans included activities such as the building of terraces and other measures designed to prevent soil erosion. Second, the FSA/FACTA required the USDA to review the farms' operations to ensure that the approved plans were followed. A DC is responsible for enforcing the compliance provisions of the FSA/FACTA. Under the FSA/FACTA procedure, the DC made the initial determination of whether a farm was out of compliance with its approved conservation plan. If the DC found the farm to be out of compliance, the farmer had an appeal right to the Area Office, and from the Area Office to the State Office of the Soil Conservation Service.

sought corrective action for a lower performance rating, receipt of a verbal reprimand, receipt of a directed reassignment, and for involuntary retirement. Willis alleged that these adverse personnel actions were taken in retaliation to disclosures he made regarding the reversals of his 1992 compliance findings. Willis claimed that his disclosures were protected under the WPA.

In an initial decision, the AJ dismissed Willis's IRA without prejudice because the OSC had accepted Willis's complaint for investigation but had not issued a decision. On March 15, 1996, Willis refiled his appeal with the Board after he withdrew his complaint from the OSC prior to a report being issued by the OSC. On June 6, 1996, the AJ held a telephonic conference with the parties to determine whether Willis had properly established a claim of whistleblowing. In a memorandum opinion dated June 7, 1996, the AJ determined that the letters forwarded by Willis to the OSC and CRC after the effective date of his retirement could not have contributed to the adverse personnel actions or Willis's allegedly involuntary retirement because the letters were in fact sent after his retirement. The AJ further concluded that Willis's finding of several farms out of conservation compliance and the subsequent reversals of those findings were not protected disclosures under the WPA because they were not included in the complaint to the OSC. Willis appealed this decision to the full Board. On February 25, 1997, the Board denied Willis's petition for review, making the AJ's initial decision the final decision of the Board.

## DISCUSSION

On appeal, a decision by the Board cannot be overturned unless it is found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedure required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c) (1994); *Ellison v. Merit Sys. Protection Bd.*, 7 F.3d 1031, 1034 (Fed. Cir.1993).

■ The issue before us concerns whether the Board was correct in dismissing Willis's

IRA on the ground that his complaint to the OSC was not premised on a prohibited personnel action covered by 5 U.S.C. § 2302(b)(8), a jurisdictional prerequisite under 5 U.S.C. § 1221(a). According to the WPA, a government official may not

> take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee ... because of ... any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

5 U.S.C. § 2302(b)(8) (1994). To maintain an IRA under the WPA, a petitioner must first establish Board jurisdiction by making nonfrivolous allegations that: (1) the petitioner engaged in a whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8); and (2) based on the protected disclosure, the agency took or failed to take a personnel action as defined by 5 U.S.C. § 2302(a). *See Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 688–89 (Fed.Cir.1992) ("[S]ubject-matter jurisdiction existed—as long as the petitioner asserted nonfrivolous claims."). The petitioner must also demonstrate that his administrative remedies, including those available through the OSC, have been exhausted. *See* 5 U.S.C. § 1214(a)(3) (1994); *Ellison*, 7 F.3d at 1035–36.

■ The Board has jurisdiction over otherwise unreviewable personnel actions where a petitioner can demonstrate jurisdiction under the WPA by alleging that a personnel action was taken against him in retaliation for activities which are protected under the WPA. Such an action is a prohibited personnel practice and violates the WPA. *See* 5 U.S.C. §§ 1221(e)(1), 2302(b)(8) (1994); *Marano v. Department of Justice*, 2 F.3d 1137, 1139 (Fed.Cir.1993) (citing *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 682 n. 5 (Fed.Cir.1992); *Knollenberg v. Merit Sys. Protection Bd.*, 953 F.2d 623, 625 (Fed.Cir. 1992)). Section 1221(a) of title 5 of the

U.S.Code creates a right in an individual to seek corrective relief from the Board with respect to prohibited personnel actions. The WPA requires that, before instituting an IRA before the Board, the employee must first seek corrective relief from the OSC, unless the personnel action is otherwise appealable to the Board. *See* 5 U.S.C. § 1214(a)(3) (1994). Once the employee has sought corrective relief from the OSC, the OSC is required to "investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken." 5 U.S.C. § 1214(a)(1)(A). If the OSC either notifies the employee that the investigation has been terminated or does not notify the employee within 120 days after the employee filed the complaint that the OSC intends to pursue corrective action, only then may the employee file an appeal with the Board. *See* 5 U.S.C. § 1214(a)(3)(B); *Marano,* 2 F.3d at 1139–40 (citing *Ward v. Merit Sys. Protection Bd.,* 981 F.2d 521, 523 (Fed.Cir.1992)).

To prevail in a case of retaliation for whistleblowing under the WPA, an employee must show by a preponderance of the evidence that a protected disclosure was made and that it was a contributing factor in the personnel action. *See* 5 U.S.C. § 1221(e)(1); 5 C.F.R. § 1209.7 (1997); *Ellison,* 7 F.3d at 1034. If an employee fails to demonstrate that the aggrieved personnel action was the result of a prohibited personnel practice as described in § 2302(b)(8), he is not entitled to corrective relief under the WPA. *See Id.* Thus, in order to establish the Board's jurisdiction over his IRA, Willis must first allege that he has made a disclosure that is protected under section 2302(b)(8).

■ On appeal, Willis admits that the letters written to the OSC and to the CSC were made after the effective date of his retirement and therefore cannot constitute protected disclosures within the purview of the WPA. Instead, Willis argues that his complaints to supervisors regarding the reversal of his findings in 1992 constitute protected disclosures in and of themselves. Willis states that when six of his findings in 1992 were reversed, he complained to his direct supervisors. Willis now contends that these complaints constitute disclosures protected by the WPA.

■ The purpose of the WPA is to encourage government personnel to disclose government wrongdoing to persons who may be in a position to remedy the problem without fearing retaliatory action by their supervisors or those who might be harmed by the disclosures. *See Marano,* 2 F.3d at 1142. However, "[c]riticism directed to the wrongdoers themselves is not normally viewable as whistleblowing." *Horton v. Department of Navy,* 66 F.3d 279, 282 (Fed.Cir.1995). Willis's complaints to supervisors are not disclosures of the type the WPA was designed to encourage and protect. Discussion and even disagreement with supervisors over job-related activities is a normal part of most occupations. It is entirely ordinary for an employee to fairly and reasonably disagree with a supervisor who overturns the employee's decision. In complaining to his supervisors, Willis has done no more than voice his dissatisfaction with his superiors' decision. He has taken no action to bring an issue to the attention of authorities in a position to correct fraudulent or illegal activity. Further, there is no evidence that Willis made disclosures that would lead his supervisors to rationally believe that they might be subjected to discipline. Willis did not contact or complain to a higher authority until after he had already retired in 1993. The WPA is designed to protect employees who risk their own personal job security for the benefit of the public. *Horton,* 66 F.3d at 282. Willis took no such risk. Because Willis's disclosures were not made to persons in a position to correct the alleged abuse, and because the disclosures did not evidence an intent to raise the issue with higher authorities who were in a position to correct the alleged wrongdoing, Willis's disclosures to his immediate supervisors are not protected disclosures for the purposes of the WPA.

■ Willis next argues that the mere finding that seven farms were out of compliance, by itself, constitutes a protected disclosure under the WPA. To this end, Willis cites this court's opinion in *Marano v. Department of Justice,* which states that

[t]he WPA, however, also applies to the situation where a government employee discloses information that is closely related to the employee's day-to-day responsibilities, such that structuring a remedy to the situation revealed in the disclosure could foreseeably affect the whistleblower.

2 F.3d at 1142. This argument hangs by a weak thread which breaks at the first pull. The *Marano* case involved a government employee, who upon making a protected disclosure of mismanagement by his supervisors, was reassigned to another office as a result of a personnel reorganization undertaken to remedy the mismanagement brought to light by Marano's disclosure. *Id.* at 1141. This court held in *Marano* that, regardless of whether the adverse personnel action was taken in retaliation for the protected disclosure, or was merely an administrative result of the disclosure, the whistleblower need only demonstrate that the protected disclosure was one of the factors that affected the personnel action in order to maintain an IRA with the Board. *Id.* at 1143. The *Marano* court was concerned with the possibility that allowing agencies to reason "that the personnel action was grounded in bases 'independent' of the actual protected disclosure could easily be used as a ruse to eviscerate the WPA's protection." *Id.* at 1142. Contrary to Willis's assertion, the *Marano* court did not announce a blanket rule entitling employees to assert that the required performance of their day-to-day responsibilities could in any way constitute a protected disclosure.

Willis would have this court hold that nearly every report by a government employee concerning the possible breach of law or regulation by a private party is a protected disclosure. This is surely not the goal of the WPA. As we have stated previously and reiterate, the WPA is intended to protect government employees who risk their own personal job security for the advancement of the public good by disclosing abuses by government personnel. Part of Willis's job duties as a DC was to review the conservation compliance of farms within his area. In reporting some of them as being out of compliance, he did no more than carry out his required everyday job responsibilities. This is expected of all government employees pursuant to the fiduciary obligation which every employee owes to his employer. Willis cannot be said to have risked his personal job security by merely performing his required duties. Determining whether or not farms were out of compliance was part of his job performance and in no way did it place Willis at personal risk for the benefit of the public good and cannot itself constitute a protected disclosure under the WPA.

■ Willis finally argues that he made protected pre-retirement disclosures to co-employees and members of the general public. Even if Willis's alleged pre-retirement statements to his colleagues and others had been protected disclosures, Willis nonetheless could not prevail. In reviewing Willis's claim, the Board is limited to review of only those materials submitted to the OSC. The rationale behind submitting the claim first to the OSC is to enable the OSC to remedy any wrongdoing it finds without involving the Board. *See Ward,* 981 F.2d at 526. The exhaustion requirement would be rendered meaningless if a claimant were permitted to submit evidence of protected disclosures to the Board that was not submitted to the OSC. In *Ellison,* we stated that a failure to explicitly raise disclosures a claimant believes are protected with the OSC precludes consideration of these issues by the Board. *See Ellison,* 7 F.3d at 1037. In that case, the claimant failed to raise certain allegedly protected disclosures with the OSC and raised them clearly only in his appeal to the Board. *Id.* We held there, as we do here, that the Board was correct in declining to consider allegations of disclosures not clearly raised before the OSC. *Id.* On appeal, Willis alleges that prior to his retirement he disclosed the reversals of his compliance findings to anyone who was in a position to take action. Willis claims that these actions were protected disclosures under the WPA. However, Willis does not explicitly mention these disclosures in his complaint to the OSC and therefore he has failed to meet the requirement that he exhaust his administrative remedies under 5 U.S.C. § 1214(a)(3). As a result, the Board's decision to refuse to consider these alleged disclosures to the general public is supported by substantial evidence.

CONCLUSION

Because Willis has not alleged any protected disclosures that fall within the purview of the WPA, the Board's decision that it does not have jurisdiction under 5 U.S.C. § 1221(a) to hear Willis's IRA is supported by substantial evidence and is not contrary to law. Accordingly, the decision of the Board to dismiss the case for lack of jurisdiction is

*AFFIRMED.*