**Victor J. BRAVO, Petitioner,**

v.

**DEPARTMENT OF VETERANS AFFAIRS, Respondent.**

No. 00–3317.

United States Court of Appeals, Federal Circuit.

Jan. 12, 2001.

Rehearing en Banc Denied March 20, 2001.

Before LOURIE, CLEVENGER, and RADER, Circuit Judges.

DECISION

PER CURIAM.

Victor J. Bravo petitions for review of the final decision of the Merit Systems

Protection Board ("the Board") dismissing for lack of jurisdiction his Individual Right of Action ("IRA") appeal filed pursuant to 5 U.S.C. § 1221 (1994). *Bravo v. Dep't of Veterans Affairs,* No. SF–1221–98–0013–B–1 (MSPB May 5, 2000) (final order). Because Bravo did not make a disclosure that was protected under the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (codified in scattered sections of 5 U.S.C.), we *affirm*.

In June of 1993, Mr. Bravo was hired by the Department of Veterans Affairs ("the agency") as a claims clerk at the California Regional Processing Office ("CARPO") in San Diego, California. *Bravo v. Dep't of Veterans Affairs,* No. SF–1221–98–0013–B–1, slip op. at 4 (MSPB Nov. 17, 1999) (initial decision). Bravo had previously been employed as an engineering technician for the Department of the Navy, but was separated from that position in 1987 due to disability retirement. *Id.* In reviewing his personnel records, Kathy Lopez, a personnel management specialist with the agency, discovered that Bravo might have previously been retired on disability. *Id.* at 4–5. In August of 1993, Lopez met with Bravo and suggested that he submit a copy of his Navy retirement statement. *Id.* at 5.

In November of 1993, Bravo received a mid-year performance evaluation from his supervisor, Jim Sparks, indicating that he needed to be "more timely" in certain aspects of his work. *Id.* at 7. Shortly thereafter, Bravo told his union steward that he believed his evaluation was unfair and an attempt to "coerce" him into socializing with Sparks. *Id.* Bravo also wrote a letter to the management, dated November 25, 1993, complaining about his evaluation and accusing Sparks of treating a co-worker more favorably than himself. *Id.* With this letter, Bravo included his "Diary of

Events In CARPO," which contained allegations of mismanagement by Sparks. *Id.*

Meanwhile, Lopez contacted the Office of Personnel Management ("OPM") and confirmed that Bravo was receiving a monthly disability annuity. *Id.* After speaking with an OPM benefits specialist about Bravo's retirement annuity and the required salary offset, Lopez held a meeting with Bravo and Sparks. *Id.* at 7–8. At this meeting, Lopez informed Bravo of the offset requirement and told him that there was a possibility that an overpayment had occurred, depending on the amount of his annuity. *Id.* at 8. Lopez also asked to see his retirement statement, which Bravo testified he submitted a few days later. *Id.*

Bravo subsequently made a series of complaints to his Equal Employment Opportunity ("EEO") counselor, his union steward, U.S. Senators Dianne Feinstein and Barbara Boxer, and Vice President Al Gore, alleging acts of reprisal by the agency. *Id.* at 8–9. According to Bravo, the agency raised the issue of overpayment and initiated a salary offset because he complained about his performance evaluation and made allegations of mismanagement in his "Diary." *Id.* at 9. Bravo also filed a formal EEO complaint with the agency. *Id.* at 8 n. 32.

The agency eventually decided to waive approximately half of the overpayment and collect the rest because it determined that Bravo had not been informed about the problem until he was halfway through the overpayment period. *Id.* at 10. Bravo appealed the agency's decision to the General Accounting Office. *Id.* at 11. Bravo also filed an IRA appeal to the Board, alleging that the agency took various actions against him in reprisal for disclosures protected under 5 U.S.C. § 2302(b)(8) (1994). *Id.* at 1. Bravo allegedly disclosed: (1) cheating by co-workers and an incident

in which his supervisor allegedly screamed and spat on him; (2) sexual harassment by his supervisor; and (3) fraudulent accusations by the agency in connection with its attempt to correct an overpayment of salary. *Id.* at 3. The Administrative Judge ("AJ") initially dismissed Bravo's appeal for lack of jurisdiction without a hearing. The AJ concluded that Bravo had not alleged facts which, if proven, would establish that he made disclosures protected under 5 U.S.C. § 2302(b)(8).

Bravo appealed the AJ's initial decision to the full Board. The Board granted his petition for review, affirming the initial decision in part, reversing it in part, and remanding the appeal for further adjudication on the issue whether the agency made fraudulent accusations in connection with its attempt to correct the overpayment of Bravo's salary. The Board directed the AJ to conduct a hearing and make specific findings as to "whether there was a meeting in August [between Bravo and Lopez], whether and when Ms. Lopez made requests for documentation of the appellant following such a meeting; and whether Lopez and Smart deliberately misrepresented the facts regarding these matters to the General Accounting Office or in the processing of the appellant's EEO complaint." *Id.* at 12.

On remand, the AJ conducted an evidentiary hearing and determined that Bravo failed to prove that he made any protected disclosures regarding alleged false statements by Lopez or Smart. The AJ specifically found that: (1) there was a meeting in August of 1993; (2) Lopez asked Bravo for his retirement statement both in August of 1993 and on one or more occasions thereafter; and (3) Bravo could not have reasonably believed that Lopez or Smart deliberately misrepresented facts to any government official when they asserted that he failed to cooperate with their ef-

forts to correct his pay status. Accordingly, the AJ concluded that his disclosures of alleged false statements by Lopez and Smart were not protected under 5 U.S.C. § 2302(b)(8).

Bravo again appealed the AJ's decision to the full Board. The Board denied his petition for review, thus rendering the AJ's decision final. 5 C.F.R. § 1201.113(b) (2000). Bravo timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (1994).

■ The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1994); *Gibson v. Dep't of Veterans Affairs*, 160 F.3d 722, 725 (Fed.Cir. 1998). Interpretation of a statute is a question of law that we review *de novo*. *Frederick v. Dep't of Justice*, 73 F.3d 349, 351–52 (Fed.Cir.1996).

On appeal, Bravo argues that the Board's decision was not supported by substantial evidence. Bravo asserts that the AJ violated the Federal Rules of Evidence by basing his decision entirely on the agency's "unsupported, undocumented and unsubstantiated 'hearsay' allegations," and by "altering and manipulating evidence." Bravo further contends that the Board "refused to investigate evidence, which was submitted in the form of 'tape recordings,' that showed federal government officials committing federal felonies," and "obstructed justice and violated the Code of Federal Regulations, by using the color of office to show preferential treatment to the 'Respondent' agency."

■ We agree with the agency that the Board did not err in dismissing Bravo's appeal for lack of jurisdiction. In order for the Board to have jurisdiction over an IRA appeal involving an allegation of retaliation for "whistleblowing" activities, an employee must make a nonfrivolous allegation that: (1) a disclosure was made, of the type described in 5 U.S.C. § 2302(b)(8); and (2) the disclosure was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1) (1994); 5 C.F.R. § 1209.7 (2000); *Willis v. Dep't of Agric.*, 141 F.3d 1139, 1142 (Fed.Cir.1998). Section 2302(b)(8) provides in relevant part that:

> (b) Any employee who has authority to take, direct others to take, recommend or approve any personnel action, shall not with respect to such authority-
>
> . . .
>
> (8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of-
>
>> (A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences-
>>
>>> (i) a violation of any law, rule, or regulation. . . .

5 U.S.C. § 2302(b) (1994). Thus, in order for Bravo to prevail in his IRA appeal, he was first required to demonstrate by a preponderance of the evidence that he made a disclosure that he reasonably believed evidenced a violation of a law, rule, or regulation. *Willis*, 141 F.3d at 1143.

We agree with the agency that the Board did not err in concluding that Bravo failed to demonstrate that he made any disclosure that was protected under 5 U.S.C. § 2302(b)(8). As the Board correctly recognized, 18 U.S.C. § 1001 makes it unlawful for an individual to knowingly make false statements in any matter within the jurisdiction of the executive, legisla-

tive, or judicial branches of the United States. However, after considering the conflicting testimony of Bravo and Lopez, the AJ found that Bravo could not have reasonably believed that Lopez or Smart deliberately misrepresented facts to any government official when they asserted that he failed to cooperate with their inquiries. *Bravo*, slip op. at 15.

■ While Bravo essentially argues that the Board's decision lacks factual support, that assertion is belied by the testimony of Lopez and other agency employees. The AJ specifically found that Lopez's testimony was corroborated by two other witnesses, and that her demeanor was forthright and sincere. *Id.* at 13–14. In contrast, the AJ found that Bravo's testimony was uncorroborated and inherently improbable, and that his objectivity seemed to be impaired. *Id.* at 14. Based on these findings, the AJ credited Lopez's testimony over that of Bravo. *Id.* at 15. To the extent that Bravo is challenging the AJ's weighing of the evidence, "we do not substitute our judgment for that of the Board as to the weight of the evidence or the inferences to be drawn therefrom." *Cross v. Dep't of Transp.*, 127 F.3d 1443, 1448–49 (Fed.Cir.1997). Moreover, the AJ's credibility determinations are "virtually unreviewable" upon appeal. *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed.Cir.1986). Thus, the Board's decision was based on substantial evidence.

■ With respect to Bravo's assertion that the AJ violated the Federal Rules of Evidence by relying on unsubstantiated "hearsay" evidence, the Federal Rules of Evidence do not apply to Board hearings. *Yanopoulos v. Dep't of Navy*, 796 F.2d 468, 471 (Fed.Cir.1986). Moreover, even under the Federal Rules of Evidence, which apply in stricter and more formal trial pro-

ceedings, Lopez's testimony as to whether or not *she* had asked Bravo for his retirement statement was not hearsay. *See* Fed.R.Evid. 801(c) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").

We have considered Bravo's remaining arguments, including his unsubstantiated allegations of manipulation of evidence and obstruction of justice, but conclude that they are without merit.

Because the Board did not err in dismissing Bravo's appeal for lack of jurisdiction, we affirm.