Michael C. SMITH, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

No. 01–3015.

United States Court of Appeals, Federal Circuit.

April 6, 2001.

Before MAYER, Chief Judge, LOURIE and CLEVENGER, Circuit Judges.

## DECISION

PER CURIAM.

Michael C. Smith petitions for review of the final decision of the Merit Systems Protection Board affirming the suitability determination of the Office of Personnel Management ("OPM"), which rated him ineligible for the position of Aircraft Electrical Worker, canceled any eligibilities that he had obtained, and debarred him from any position in the competitive federal service until September 23, 2002. *Smith v. OPM,* No. AT–0731–00–0033–I–1, 2000 WL 1337345 (M.S.P.B. Aug.16, 2000) (final order). Because Smith has not shown that the Board erred, we *affirm.*

## DISCUSSION

On October 30, 1997, Mr. Smith applied for the position of Aircraft Electrical Worker at Robins Air Force Base ("RAFB") in Georgia. On May 6, 1998,

Smith was certified and rated eligible for that position. Thereafter, the employment office at RAFB objected to Smith's eligibility because he had been fired from his previous position for excessive absence, was arrested for possession of a firearm, was on probation for driving under the influence ("DUI"), and had child support problems. After conducting an investigation, OPM issued a final decision on September 27, 1999. OPM concluded that Smith was unsuitable for federal employment based on his extensive criminal history, failure to pay child support and satisfy other financial obligations, and intentional falsification of his Standard Form 171 ("SF–171") employment application. Accordingly, OPM rated Smith ineligible, canceled any eligibilities that he had obtained from pending applications, and debarred him from any position in the competitive federal service until September 23, 2002.

On October 12, 1999, Smith appealed OPM's final decision to the Board. *Smith v. OPM*, No. AT–0731–00–0033–I–1, slip op. at 1 (M.S.P.B. Jan.24, 2000) (initial decision). After reviewing the evidence, the Administrative Judge ("AJ") affirmed OPM's suitability determination based on the charges of: (1) criminal or dishonest conduct relating to the employee's service in the position or the service of other employees; and (2) intentional false statement or deception in examination or appointment. *Id.* at 4–5; 5 C.F.R. § 731.202(b)(2), (3) (2000).

Smith appealed the AJ's initial decision to the full Board. The Board denied his petition for review, thus rendering the initial decision final. 5 C.F.R. § 1201.113(b) (2000). Smith timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (1994).

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1994); *Cheeseman v. OPM*, 791 F.2d 138, 140 (Fed.Cir.1986).

On appeal, Smith argues that the AJ failed to take into account the fact that the employment office at RAFB committed harmful error by not acting on his application until after he sought a "Congressional Inquiry." Smith alleges that Jacqueline Y. Moses, the Director of OPM's Atlanta Service Center, engaged in a prohibited personnel practice in violation of 5 U.S.C. § 2302(b)(8)(A) and (9)(A) in retaliation for his "Congressional Inquiry." * Smith also contends that OPM's Federal Investigations Processing Center ("FIPC") violated 5 C.F.R. § 732.301 by sustaining the RAFB's objection to Smith's eligibility without an investigation or the proper documentation necessary for a personnel action.

We agree with the agency that the Board did not err in affirming OPM's suitability determination. OPM may "deny an eligible appointment" when it determines that such action "will promote the efficiency of the service." 5 C.F.R. § 731.201 (2000). Criminal or dishonest conduct and intentional false statements in connection

---

* Smith asserts that on January 15, 1999, he requested Congressman Saxby Chambliss's office to make an inquiry on his behalf regarding his application. In response, Ms. Moses informed Congressman Chambliss's office that OPM's Atlanta office did not have any record of having received a request for a suitability determination and that her office had contacted RAFB and advised its employment office to resubmit his suitability determination directly to the FIPC.

with an appointment are two factors that may be considered as bases for finding an individual unsuitable for competitive federal employment. 5 C.F.R. § 731.202(b)(2), (3).

■ The AJ found that OPM proved that Smith engaged in criminal or dishonest conduct. *Smith,* slip op. at 3–4. It is undisputed that Smith had been convicted of DUI on at least three separate occasions and had been convicted of using a weapon while intoxicated. *Id.* at 3. It is also undisputed that Smith was found in contempt of court on four occasions for failure to pay child support. *Id.* at 4. Furthermore, while OPM had presented documentary evidence of Smith's convictions, Smith failed to provide any contrary evidence. *Id.* Accordingly, substantial evidence supports the AJ's determination that Smith had engaged in criminal conduct. *Id.*

■ The AJ also found that Smith had intentionally falsified his SF–171 by failing to indicate that he had been fired from his previous position and that he had been convicted for DUI in 1997. *Id.* Although Smith argued that he believed he was wrongly terminated from his previous position and that he forgot about his 1997 DUI conviction, both his arguments are unavailing. Whether or not he believed his termination was improper, the AJ found that Smith knew that he had been terminated and intentionally omitted that fact from his application. *Id.* Moreover, the AJ did not find Smith's explanation for failing to disclose his 1997 DUI conviction to be credible, given that he had pled guilty to that conviction just one month prior to completing the SF–171, *Id.* To the extent that Smith is challenging the AJ's credibility determination, it is well-settled that such determinations are virtually unreviewable on appeal. *Hambsch v. Dep't of Treasury,* 796 F.2d 430, 436 (Fed.Cir.1986). We therefore conclude that substantial evidence supports the AJ's finding that Smith intentionally falsified his SF–171.

Because there is substantial evidence to support the AJ's determinations that Smith had engaged in criminal conduct and intentionally falsified his SF–171, we conclude that the AJ properly determined that Smith was unsuitable for federal service under 5 C.F .R. § 731.202(b)(2) and (3). In fact, Smith's falsification offense by itself was a sufficient basis for upholding OPM's suitability determination, as it directly implicated his honesty and fitness for employment. *See Kissner v. OPM,* 792 F.2d 133, 134 (Fed.Cir.1986) ("Falsification of records, such as the SF–171, is a type of misconduct from which a nexus between the dismissed employee's misconduct and the efficiency of the service is presumed."). Accordingly, the Board properly upheld OPM's suitability determination because it promoted the efficiency of the service. 5 C .F.R. § 731.201 (2000).

■ With respect to Smith's assertion that the RAFB failed to take action on his application until he requested a "Congressional Inquiry," Smith has not explained how that delay prejudiced his rights, nor has he has demonstrated that OPM would likely have arrived at a different conclusion absent such delay. 5 U.S.C. § 7701(c)(2)(A) (1994); 5 C.F.R. § 1201.56(c)(3) (2000). Although he alleges that OPM took various actions against him in reprisal for his "Congressional Inquiry" request, Smith failed to make a nonfrivolous allegation that his request was a disclosure of the type protected under 5 U.S.C. § 2302(b)(8). *See Willis v. Dep't of Agric.,* 141 F.3d 1139, 1142 (Fed. Cir.1998). Finally, as for Smith's contention that OPM violated 5 C.F.R. § 732.301, that provision does not apply in this case because part 732 of title five of the Code of Federal Regulations only applies to "national security positions." 5 C.F.R.

§ 732.102 (2000) (defining the term "national security positions" and setting forth the applicability of part 732).

Because the Board's decision was supported by substantial evidence and was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we affirm.