Kathleen P. CROCKETT, Petitioner,

v.

**DEPARTMENT OF THE ARMY, Respondent.**

No. 02–3274.

United States Court of Appeals, Federal Circuit.

Jan. 7, 2003.

Before MICHEL, LOURIE, and BRYSON, Circuit Judges.

MICHEL, Circuit Judge.

Kathleen P. Crockett petitions for review of the final decision of the Merit Systems Protection Board ("MSPB") dismissing her case on the basis that it lacked jurisdiction to entertain her Individual Right of Action ("IRA") appeal. *Crockett v. Dep't of the Army,* Docket No. CH–1221–00–0400–W–1, slip op., 91 M.S.P.R. 665 (M.S.P.B. Mar.25, 2002). Based on the Administrative Judge's duly supported findings that none of Crockett's three communications was a "protected disclosure" under the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 ("the WPA"), we *affirm.*

## BACKGROUND

Crockett held a series of temporary appointments as a Personnel Staffing and Classification Specialist for the Department of the Army ("the Agency") at Fort Campbell, Kentucky. Crockett petitioned the MSPB for corrective action because, she alleged, she had been improperly passed over for a promotion. She asserted that she was not promoted because of negative information in her file which represented retaliation by her superiors for protected disclosures that Crockett had made about their actions.

Administrative Judge Cooper ("the AJ") held that under the WPA:

To establish Board jurisdiction over an IRA appeal, Appellant must show by preponderant evidence that: she engaged in whistleblower activity by making a disclosure protected under 5 U.S.C. § 2302(b)(8); the agency took or

failed to take, or threatened to take or fail to take, a "personnel action" as defined in 5 U.S.C. § 2302(a)(2); and she raised the issue before the Office of Special Counsel (OSC), and proceedings before the OSC were exhausted.

*Crockett v. Dep't of the Army,* Docket No. CH–1221–00–0400–W–1, slip op. at 2 (M.S.P.B. Apr.11, 2001) (citation omitted). He then found that Crockett did not establish that she had made any protected disclosures—in spite of evidence and arguments presented by Crockett pertaining to three disclosures she maintains merit whistleblower protection—and therefore the MSPB had no jurisdiction over the matter. *Id.* In the case of the third disclosure proffered by Crockett, the AJ also determined that even if the alleged disclosure were protected, the Agency proved by clear and convincing evidence that it would have taken the same action in the absence of any protected disclosures. *Id.* at 2, 2 n. 3. On appeal to the full board, the MSPB denied the petition for review.

For a more extensive treatment of all the facts, see the careful and thorough opinion of the AJ. *Crockett,* Docket No. CH–1221–00–0400–W–1, slip op. (M.S.P.B. Apr.11, 2001). The present opinion refers only to the facts critical to the issues on appeal.

## DISCUSSION

On appeal, a decision by the MSPB cannot be overturned unless it is found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c) (2000); *Ellison v. Merit Sys. Prot. Bd.,* 7 F.3d 1031, 1034 (Fed.Cir.1993). Jurisdiction, or the lack thereof, is ordinarily reviewed *de novo* as an issue of law. Often,

as here, however, this issue turns on factual findings. The initial issue before us, then, concerns not whether the Agency met its burden of proof, as Crockett argues in her informal brief, but rather whether the MSPB erred in dismissing Crockett's IRA on the ground that she failed to prove it was premised on a "protected disclosure" as defined in the WPA, 5 U.S.C. § 2302(b)(8) (2000),[1] a jurisdictional prerequisite under 5 U.S.C. § 1221(a) (2000).[2]

## I.

The first section of this opinion discusses each of Crockett's three disclosures and whether in view of their content and recipient they are protected under the WPA.

## A.

Crockett's first disclosure was a thirteen-page memorandum to Colonel Dial, Director of the Readiness Business Center ("RBC"), where Crockett performed most of her work at Fort Campbell. The memorandum related to a decision by the Civilian Classification Review Board ("CCRB") and Garrison Commander Colonel Fitzgerald not to upgrade any of the positions at the RBC. This decision was contrary to Crockett's recommendation on the best course of action. She listed four concerns in the memorandum that were addressed in the AJ's decision: (1) the decision was inconsistent with and misstated the requirements of the Garrison Reengineering Initiative ("GRI") action plan to improve the organization of the garrison; (2) the organizational chart provided to the CCRB by Kim Santiago (Crockett's immediate supervisor) was so "flawed" as to be misleading; (3) "the cost to RBC of the existing structure is the second lowest of all business centers"; and (4) the decision to establish cells in the RBC might necessitate a reduction in force that would not result in cost savings to the Agency. *Crockett,* Docket No. CH–1221–00–0400–W–1, slip op. at 4–10 (M.S.P.B. Apr.11, 2001).

■ The AJ concluded generally that even if the individual concerns in the first disclosure had covered subject matter arguably within the WPA, they still would not constitute protected disclosures under: (1) *Willis v. Department of Agriculture,* 141 F.3d 1139, 1143 (Fed.Cir.1998) (holding that communications must go to "persons in a position to correct the alleged abuse" in order to qualify as protected disclosures, and therefore "[d]iscussion and even disagreement with supervisors over job-related activities" do not qualify as they are "a normal part of most occupations"); and (2) *Horton v. Department of the Navy,* 66 F.3d 279, 282 (Fed.Cir.1995) (explaining that "[c]riticism directed to the wrongdoers themselves is not normally

---

**1.** According to the WPA, a government official may not:

take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee ... because of ... any disclosure of information by an employee or applicant which the employee or applicant *reasonably believes evidences a violation of any law, rule, or regulation,* or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

  5 U.S.C. § 2302(b)(8) (emphasis added).

**2.** Section 1221(a) provides:

Subject to the provisions of subsection (b) of this section and subsection 1214(a)(3), an employee, former employee, or applicant for employment may, *with respect to any personnel action* taken, or proposed to be taken, against such employee, former employee, or applicant for employment, *as a result of a prohibited personnel practice* described in section 2302(b)(8), *seek corrective action* from the Merit Systems Protection Board.

  5 U.S.C. § 1221(a) (emphases added).

viewable as whistleblowing"). *Crockett,* Docket No. CH–1221–00–0400–W–1, slip op. at 9 (M.S.P.B. Apr.11, 2001). The AJ emphasized that Crockett had not communicated with anyone who had the authority to remedy any wrongdoing.[3]

Crockett argues on appeal that the AJ erred because he did not take into account that Colonel Dial, as director of the RBC, was outside of her supervisory chain of command. She maintains that this distinguishes her case from *Willis* and *Horton* because Colonel Dial was in a position to raise the concerns she mentioned with Colonel Fitzgerald, who could correct wrongdoing. While Crockett may be correct that there are factual distinctions between her case and the *Willis* and *Horton* cases, these distinctions cannot mean she avoids their holdings. The purpose of the WPA is to encourage government personnel to disclose government wrongdoing to persons who may be in positions to remedy the wrongdoing, without fearing retaliatory action by their supervisors or those who might be harmed by their disclosures. *See Marano v. Dep't of Justice,* 2 F.3d 1137, 1142 (Fed.Cir.1993). The supposed wrongdoer in this scenario is apparently Colonel Fitzgerald because he is the one who issued the decision not to upgrade any of the positions in the RBC.[4] Crockett needed to have made a disclosure to a person in a position to correct the alleged abuses, not, as she did here, to Colonel

Dial, a subordinate of the wrongdoer. Her argument that Colonel Dial could present her concerns to Colonel Fitzgerald makes it even clearer that her "disclosure" was merely an indirect communication to the wrongdoer himself (Colonel Fitzgerald). Since she did not make any disclosure to someone in a position to remedy the supposed wrongdoing—namely someone superior to Colonel Fitzgerald—the AJ's finding of no protected disclosure must be affirmed.

Having affirmed the AJ's general finding about the whole disclosure, we need not reach his more specific findings with respect to the individual concerns in the first disclosure. Crockett also waived any challenge to these findings individually by presenting no arguments against them.

### B.

Crockett's second disclosure was her email to Colonel Dial communicating information Crockett had received from "a subject matter expert" about how to ascertain whether or not a particular employee was eligible for a voluntary separation incentive payment. *Crockett,* Docket No. CH–1221–00–0400–W–1, slip op. at 10–12 (M.S.P.B. Apr.11, 2001). The AJ found that Crockett consulted the expert at Colonel Dial's request and the information she received was about the Agency's policy as set forth in the Civilian Personnel Manual. *Id.* at 12–13. The AJ opined that "[u]nder

---

**3.** The AJ reported that Crockett admitted Colonel Dial was subordinate to Colonel Fitzgerald. *Crockett,* Docket No. CH–1221–00–0400–W–1, slip op. at 5 (M.S.P.B. Apr.11, 2001). In any event, since Colonel Fitzgerald was the garrison commander, by definition all other officers were subordinate to him. As Colonel Dial was, therefore, subordinate to (Colonel Fitzgerald) or in a different organization from the persons (review board members) whose actions Crockett was supposedly disclosing, Colonel Dial had no ability to remedy any wrongdoing by them. *Crockett,*

Docket No. CH–1221–00–0400–W–1, slip op. at 4–8 (M.S.P.B. Apr.11, 2001).

**4.** The AJ's opinion suggests that the second concern in the first disclosure may have had more to do with wrongdoing by Santiago. However, if Colonel Dial was "outside [Crockett's] supervisory chain," as Crockett argues, then he also could not have corrected any abuse by Santiago, who was clearly in the same "supervisory chain" as Crockett even if he was of higher rank.

the current state of the law, it is unclear when (if ever) an action required in performing one's job can be considered a disclosure." *Id.* at 13. Thus, the AJ did not rely on Crockett's email being part of her job performance, but went on to find that because Crockett's email essentially communicated the contents of the Civilian Personnel Manual, which was a published document, it was not protected under the WPA in light of *Meuwissen v. Department of the Interior*, 234 F.3d 9, 13 (Fed.Cir. 2000), which held that a disclosure of information that is publicly known is not a "protected disclosure" under the WPA. The AJ also found not credible the section of Crockett's email that purported to give the expert's opinion that granting a payment to that employee would have been "an illegal action." *Crockett*, Docket No. CH–1221–00–0400–W–1, slip op. at 15 (M.S.P.B. Apr.11, 2001). The AJ determined that the Manual would not make the granting of a payment even a violation of policy, much less a "violation of law, rule, or regulation" because the Manual "clearly and unambiguously allows exceptions on a case by case basis" and no reasonable person could have thought otherwise.[5] *Id.*

Crockett argues before us that the AJ erred in his finding about this disclosure because he misinterpreted the policy given in the Civilian Personnel Manual.[6] Not only does Crockett not explain the specific misinterpretation that the AJ supposedly made, but also she does not explain why any interpretation of the policy is relevant since the Manual was a published document (as explained above) and since any application of the policy must have been subsequent to her disclosure. Instead, her discussion is limited to reasons why her own interpretation of the policy is more credible, including her extensive experience.[7] As the AJ correctly applied *Meuwissen* and his finding about the unprotected nature of the email is supported by substantial evidence—both as to the portion of the email that referred to the Civilian Personnel Manual because it is not "concealed" information, and the portion of the email that purported to disclose an illegal act because it was not reasonably believable—we must affirm with respect to this disclosure as well.

## C.

The third disclosure by Crockett was her email to the Colonel Fitzgerald summarizing the contents of an "open door" meeting with him, as the selecting official for the position of Director of the Civilian Personnel Advisory Center ("CPAC"), to discuss her possible promotion to this posi-

---

5. The AJ's opinion also included some discussion about whether or not a payment was ever granted—either before or after the email—and found that it had not been. But this is irrelevant to the issue on appeal since any payment would not have constituted wrongdoing according to the Civilian Personnel Manual. *Crockett*, Docket No. CH–1221–00–0400–W–1, slip op. at 17 (M.S.P.B. Apr.11, 2001).

6. Crockett also argues on appeal that the AJ erred in finding that this disclosure was not protected because it was within her official duties and because the record did not show that it prevented an illegal act. Although the AJ discussed each of these issues, he did not rely on either of them to find her disclosure unprotected. Thus, Crockett's arguments about these issues are not significant. To the extent that they are relevant at all, the AJ's contrary findings are supported by substantial evidence (for example, Colonel Fitzgerald's letter denying that he had granted a voluntary separation incentive payment).

7. Additionally, later allegations surrounding the same events although "disclosed" to the OSC cannot logically count retroactively as whistleblowing. *See, e.g., Crockett*, Docket No. CH–1221–00–0400–W–1, slip op. at 17, 23 (M.S.P.B. Apr.11, 2001). This court, therefore, has also not addressed any such allegations.

tion, and also describing a few additional concerns. *Crockett,* Docket No. CH–1221–00–0400–W–1, slip op. at 18–19 (M.S.P.B. Apr.11, 2001). This email included two parts. First, Crockett maintained that CPAC employees wrongly provided negative information about her. *Id.* at 19–20. Second, Crockett made an allegation of wrongdoing by one of her supervisors, Robert Vail, in "placing [Carolyn] Suiter in the CPAC position for nearly one year" without using competitive procedures, which Crockett contended was "an *abuse of the merit system*" that gave Suiter an unfair advantage in the competition for promotion to the position of director of the CPAC.[8] *Id.*

The AJ found that Crockett did not demonstrate anything inappropriate or untrue about any negative information provided because she did not identify either the statements or persons making the statements. *Id.* at 20–21, 21 n. 21. The AJ, therefore, found that the first part of the disclosure could not be considered "protected." *Id.* at 21. Crockett does not mention this part on appeal so we will treat challenges about this part as waived.

With respect to the second part, the AJ found that Crockett's allegation about Suiter's status was unfounded because Suiter was detailed to an ungraded and unestablished set of duties, not the Director position as Crockett contended. *Id.* Moreover, according to the AJ, nothing in the record indicated that Crockett made any attempt to determine Suiter's true position and thus a reasonable person would not have had Crockett's belief that the action by Vail was improper. *Id.* at 21–

22.[9] Additionally, the AJ found that there is no requirement that competitive procedures be used to detail someone to an ungraded and unestablished set of duties. *Id.* at 22. Overall, the AJ found not credible Crockett's contention that she reasonably believed that Suiter was detailed to a position improperly. *Id.* at 21–24. As a result, the AJ found that the second part of the disclosure was also not protected under the WPA.

█ Crockett argues on appeal that the AJ erred in finding that she did not have a reasonable belief that Suiter was detailed into the CPAC Director position because there was contrary evidence which suggests that Suiter was, and, more importantly, that Crockett was not required to prove an actual regulatory violation in order for the disclosure to be protected. As Crockett had the burden to prove, however, that her belief was reasonable, which she has not, and as the AJ's other findings are supported by substantial evidence in the form of the Agency's exhibits and witness testimony that the AJ found to be credible, we find no reversible error.

Crockett further argues that the AJ erred because his holding about the unreasonableness of Crockett's belief that her disclosures were protected contradicted oral statements the AJ made during the hearing. This argument lacks merit because that the AJ may have changed his view after further deliberation and before writing his opinion does not, without more, prove that the decision was contrary to law, and certainly does not connote im-

8. Crockett and Suiter were both among the candidates applying for this position. *Crockett,* Docket No. CH–1221–00–0400–W–1, slip op. at 18 (M.S.P.B. Apr.11, 2001).

9. The AJ explained, for example, that "[n]othing in the record indicates that a reasonable person (who had made any effort to investigate the matter) would have reasonably believed that Ms. Suiter had been detailed into the CPAC position." *Crockett,* Docket No. CH–1221–00–0400–W–1, slip op. at 21–22 (M.S.P.B. Apr.11, 2001).

proper procedure or the lack of substantial evidentiary support.

Finally, it is also not reversible error, as Crockett mistakenly asserts, for the AJ to decline to refer to every piece of evidence in his opinion so long as there is substantial evidence supporting his decisions, which in this case there is. *See Medtronic, Inc. v. Daig Corp.,* 789 F.2d 903, 906 (Fed.Cir.1986) (explaining that we presume that the fact finder considers all the evidence presented, even if not mentioned, unless he expresses otherwise).

## II.

This second section discusses Crockett's arguments about the exclusion of certain witnesses. It is unclear from the record whether Crockett, through her attorney, properly informed the AJ about the witnesses she now asserts he excluded improperly. However, even if she did duly proffer them at the hearing, the AJ did not reversibly err in excluding them. The AJ has broad discretion to determine who will testify and any such ruling will only be overturned by this court for an abuse of discretion, and even then only if the witness would have been likely to change the result below. *See, e.g., Veneziano v. Dep't of Energy,* 189 F.3d 1363, 1369 (Fed.Cir. 1999). Crockett's arguments about the excluded witnesses fail to persuade us that they were relevant to whether or not she made protected disclosures. Nor has she shown prejudice. To the extent that evidence excluded pertained to questions other than the protected disclosures, even assuming that the AJ abused his discretion, such error would be harmless because we have affirmed the AJ's findings of no protected disclosures (as explained above). Moreover, since every tribunal must assure itself of its jurisdiction before reaching the merits, it was not an abuse of discretion under the circumstances of this case to exclude witnesses or other evidence on the merits, pending the AJ's ruling on jurisdiction. We, therefore, need not reach such other issues, including whether or not Crockett would have been selected for the CPAC Director position were it not for the alleged retaliation.

## CONCLUSION

The AJ's findings that none of Crockett's disclosures were protected under the WPA are legally correct ("in accordance with law") and supported by substantial evidence, mainly the disclosures themselves. As a result, we need not decide whether the Agency proved it would still not have selected Crockett for promotion, even absent her disclosures and any negative information in her file that resulted. As her appeal fails to show any reversible error under 5 U.S.C. § 7703(c), we must affirm.