**Richard J. MESTAN, Petitioner,**

v.

**INTERNATIONAL BOUNDARY AND WATER COMMISSION, U.S. AND MEXICO, Respondent.**

No. 04–3095.

United States Court of Appeals, Federal Circuit.

DECIDED: April 12, 2004.

Rehearing Denied June 9, 2004.

Carolyn J. Craig, Principal Attorney, Bryant G. Snee, David M. Cohen, of Counsel, Department of Justice, Washington, DC, Mario Lewis, of Counsel, El Paso, TX, for Respondent.

Richard J. Mestan, El Centro, CA, pro se.

Before LOURIE, CLEVENGER, and BRYSON, Circuit Judges.

## DECISION

PER CURIAM.

Richard Mestan appeals from a decision of the Merit Systems Protection Board, Docket No. DA–1221–02–0420–W–1, dismissing his individual-right-of-action ("IRA") appeal for lack of jurisdiction. We *affirm*.

## BACKGROUND

From 1996 through 2000, Mr. Mestan served two consecutive two-year term appointments as an environmental engineer with the International Boundary and Water Commission, United States and Mexico ("the agency"). Mr. Mestan began his service at the agency's Ambos Nogales Wastewater Facility in Arizona. During his time in Arizona, Mr. Mestan brought several concerns to the attention of his supervisor, Carlos Pena. According to Mr. Mestan's argument to the Board, those concerns included:

> The [agency] was wasting far too much electrical energy. It did not need (or still need) to operate all of the aerators full throttle, 24 hours a day. As the agencies [sic] only PhD environmental engineer specializing in wastewater, I informed the management that a proper balance between mixing and aeration was the main thing needed. This could be achieved with simple modifications to the existing complete-mix lagoon aerators.
>
> The [agency's] treatment efficiency was (and is) significantly compromised by the practice listed above. As a result, the plant has been in violation of state and federal regulations for discharge of a point source flow to a waterway. . . .
>
> The added threat of ammonia to human health and/or the environment has been blown out of proportion. Toxicity testing has never clearly demonstrated that expensive measures to remove almost all the ammonia in the wastewater are necessary. . . .

Mr. Mestan alleges that in order to keep his position he was required in 2000 to move to Calexico, California, to support the Mexicali wastewater project. Because the cost of living and taxes were much higher in California, Mr. Mestan argues, he effectively took a pay cut when he moved. Mr. Mestan also alleges that his working conditions were much worse in California.

In California, the agency gave Mr. Mestan the use of a government vehicle for work-related purposes. The agency subsequently suspended Mr. Mestan for 14 days for what Mr. Mestan characterized as a false charge of improperly using the vehicle for other than official purposes.

After Mr. Mestan's second term with the agency expired, his appointment was not renewed or made permanent.

Mr. Mestan filed a complaint with the Office of Special Counsel ("OSC") alleging, *inter alia*, that he was suspended and that his term appointment was not extended because he was a whistleblower. Mr. Mestan referred to the concerns he voiced to Mr. Pena as the acts of whistleblowing for which the agency had allegedly retaliated against him. After an investigation, the OSC closed its inquiry on Mr. Mestan's complaint on the ground that his disclosures to Mr. Pena regarding recommendations for correcting treatment inefficiencies were not disclosures protected by the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b)(8). The OSC concluded that because Mr. Mestan did not establish that his disclosures were protected, the WPA did not give him a basis for challenging the agency's failure to extend his term appointment. Regarding his disclosure that the project he was working on would require operating and maintenance costs grossly out of proportion to the population the project was designed to serve, the OSC ruled that the disclosure might be protected, but that Mr. Mestan had failed to establish a connection between that disclosure and the personnel actions to which he objected.

Mr. Mestan then filed an IRA appeal with the Merit Systems Protection Board. The administrative judge who was assigned to the case ruled that the disclosures on which Mr. Mestan relied were not protected disclosures and that the Board therefore did not have jurisdiction to hear the appeal. In particular, the administrative judge concluded that the disclosures at issue "were all made to his immediate supervisor, Mr. Carlos Pena, in connection with his duties and constituted arguments regarding the efficiency, performance, and legal sufficiency of the very project he was coordinating. In other words, they constituted the very type of arguments and recommendations that the appellant was expected to make through normal channels." Mr. Mestan filed a petition for review by the full Board, which denied the petition. As a result, the initial decision of the administrative judge became the final decision of the Board. Mr. Mestan then sought review by this court.

## DISCUSSION

The Board has jurisdiction over an IRA appeal "if the appellant has exhausted his administrative remedies before the OSC and makes 'non-frivolous allegations' that (1) he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8), and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)." *Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed.Cir.2001). The agency does not dispute that Mr. Mestan exhausted his administrative remedies before the OSC and that the agency's decision not to renew his appointment constituted a failure to take a personnel action within the meaning of the WPA. The dispositive issue on this appeal is therefore whether Mr. Mestan made nonfrivolous allegations that the disclosures he made to Mr. Pena were protected.

We have held that "an employee who makes disclosures as part of his normal duties cannot claim the protection of the WPA." *Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1352 (Fed.Cir.2001), citing *Willis v. Dep't of Agric.*, 141 F.3d 1139, 1144 (Fed.Cir.1998) (a disclosure by an employee assigned to review farms for compliance with Department of Agriculture conservation plans that seven farms were out of compliance was not a protected disclosure because "[d]etermining whether or not farms were out of compliance was part of his job performance and in no way

did it place Willis at personal risk for the benefit of the public good").

Mr. Mestan's position description provided as follows, in pertinent part:

The incumbent is responsible for managing assigned environmental investigations (some of which are on-going, and some of which are at the original initiation stage) of transboundary pollution problems by:

Reviewing existing data and information regarding the specific pollution problems including, but not limited to, prior environmental impact statements, water quality studies, and previously developed facilities plans and/or concept studies;

. . . .

Serving as the primary technical point of contact for providing information, scheduling meetings, and/or responding to changes in scope;

Conducting field observations of on-going international infrastructure projects; and

Reviewing A–E work products for compliance with scope of work and deliverable dates.

. . . .

The purpose of the position is to plan and conduct examinations and investigations of transboundary water quality problems impacting on peoples in both countries [United States and Mexico]. Engineering recommendations or alternatives, and the defining of broad problems as a basis for further study in an international climate require tact and diplomacy. The results of the work will affect a large number of persons living along the international boundary in terms of ecological and environmental support. Failure to provide for viable solutions within the economic framework of the international boundary area may result in the absence of further efforts to resolve the problems.

As the Board observed, all the disclosures that Mr. Mestan alleges were protected appear to fall within the duties set forth in his position description. For example, identifying the waste of electrical energy in the use of aerators, "inform[ing] the management that a proper balance between mixing and aeration was the main thing needed," and suggesting "simple modifications" to implement his recommendations seem to fit within the scope of the duties of managing environmental investigations as set out in his position description. Likewise, analyzing the potential threat of ammonia in wastewater and evaluating the agency's response fall within his official duties. Thus, on its face, Mr. Mestan's position description suggests that Mr. Mestan was expected to identify such problems and report them to his superiors as part of his job. Although Mr. Mestan argues that his actual job differed from this position description, he offers no evidence in support of that contention.

Mr. Mestan has not presented any evidence that the disclosures he made went beyond what was required by his position. Instead, Mr. Mestan argues that the Board failed to consider the facts that he presented. Since the disclosures relied on by Mr. Mestan were disclosures that he was expected to make in the ordinary course of his position, the Board was correct in concluding that those disclosures were not protected. *See Huffman,* 263 F.3d at 1353 ("The WPA was established to protect employees who go above and beyond the call of duty and report infractions of law that are hidden."); *Willis,* 141 F.3d at 1144. To the extent that some of Mr. Mestan's statements constituted recommendations that were not followed and reflected his disagreement with policy decisions made by the agency, those statements also did not constitute whistleblowing disclosures. *Langer v. Dep't of the Treasury,* 265 F.3d 1259, 1266 (Fed.Cir.

2001); *Huffman,* 263 F.3d at 1348–49; *Willis,* 141 F.3d at 1143. Because Mr. Mestan's disclosures were not protected disclosures within the meaning of the WPA, Mr. Mestan has not raised a non-frivolous allegation that he engaged in protected whistleblowing activity. Consequently, we uphold the Board's determination that it did not have jurisdiction to address the merits of Mr. Mestan's IRA appeal.