**Cynthia D. VENEZIANO, Petitioner,**

v.

**DEPARTMENT OF ENERGY,
Respondent.**

No. 98–3070.

United States Court of Appeals,
Federal Circuit.

Sept. 1, 1999.

David K. Colapinto, Kohn, Kohn & Colapinto, P.C., of Washington, DC, argued for petitioner. With him on the brief was Stephen M. Kohn.

Lee J. Freedman, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. On the brief were David M. Cohen, Director, Kathryn A. Bleecker, Assistant Director, and Peter S. Levitt, Trial Attorney.

Before RICH, Circuit Judge,* FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This appeal challenges the decision of the Merit Systems Protection Board (the Board) upholding the appellant Veneziano's separation pursuant to a reduction in force. She contends that her retention rights were improperly determined and that she was selected for separation in retaliation for protected conduct. We reject her contentions and affirm the Board's decision.

I

*The Value Engineering Report.* Veneziano worked for the Department of Energy (the Department) as a GS–13 engineer in the state of Washington from 1991 until June 1995. On June 12, 1995, she was transferred to the Department's headquarters in Washington, D.C. and promoted to grade GS–14. In October, 1995, Veneziano was assigned to work on value engineering – defined as "[a]n organized effort directed at analyzing the functions of systems, equipment, facilities, services, and supplies for the purpose of achieving the essential functions at the lowest life-cycle cost consistent with required performance, reliability, quality, and safety."

Before Veneziano arrived in Washington, the Office of Management and Budget (OMB) had issued Circular A–131, which required federal agencies "to use value engineering .:. as a management tool, where appropriate, to reduce program and acquisition costs" and to "report the Fiscal Year results of using [value engineering] annually to OMB." The Department, however, was implementing its own "Life Cycle Asset Management" Order, a plan which incorporated value engineering. In August 1995, Antonio Tavares, the director of the Department's Office of Infrastructure Acquisition Services, wrote OMB and, in light of the Department's use of value engineering in the Order, "recommend[ed] that OMB abandon [the Department's Circular A–131] reporting requirements, in the spirit of eliminating activities with no added value to the principle objective." The Department did not file a 1995 value engineering report with OMB.

In March of 1996, Department officials including Veneziano and Tavares – who became Veneziano's supervisor in December 1995 – met with OMB officials to discuss compliance with Circular A–131. According to Veneziano, she sent a memorandum to Tavares before the meeting stating that to "any outside observers ..., [the Order] will not be considered sufficient to implement [value engineering] as described in the various laws, acts, standards, etc." OMB disagreed with Tavares's interpretation of the Circular and, as a result of the meeting, the Department agreed to file the required fiscal report for 1995. Tavares assigned the preparation of the report to Veneziano.

The OMB Circular also required "[a]gency heads [to] ask the Inspectors General to audit agency value engineering programs to (1) validate the accuracy of the agency reported value engineering savings and (2) assess the adequacy of agency value engineering policies." In June 1996, the Department's Inspector General requested the Department's 1995 value engineering report, on which Veneziano was still working.

* Circuit Judge Rich heard oral argument in this case, but died on June 9, 1999. The case was decided by the remaining judges in accordance with Fed. Cir. Rule 47.11.

In response to the request, Tavares told Veneziano to submit to the Inspector General the data she had gathered for her report. Veneziano, however, refused to do so. In a later memorandum to Tavares in July, 1996, she explained that she so acted because "some of the preliminary data turned out to be flawed" and "[t]his concern was part of [her] strong feelings of discomfort of just faxing to the [Inspector General] what data [she] had so far"; she blamed the inaccurate data on the field offices that submitted it, asserting that many field offices "fabricated" data, "reported cost savings that had no relationship whatsoever to anything resembling" value engineering, or "didn't bother to report their cost savings at all." Without the report or the data, the Inspector General concluded that "[s]ince the Department of Energy has not prepared their fiscal year 1995 value engineering savings report, we were not able to assess the validity of savings reported or the implementation of OMB Circular A–131." Veneziano eventually finished the report and Tavares submitted it to OMB in early July.

B. *Veneziano's Performance Rating.* In February 1996, Veneziano received her 1995 performance "Annual rating of record." She was rated "fully successful," which was the third highest of five possible ratings. During the three prior years she had worked in the state of Washington, she had been rated "highly successful," the second highest rating. Her 1995 rating was given by Richard Earl, who had been her supervisor from June 12, 1995 until September 3, when he was reassigned.

Veneziano was given a form showing her "fully successful" rating. She signed the form, indicating that she had "reviewed this performance rating" and that it had "been discussed with" her. Although she could have attached comments, she did not do so, and she did not protest or challenge the rating.

C. *The Reduction in Force.* In October 1996 the Department decided that a reduction in force was required because of a shortage of funds. Office of Personnel Management (OPM) regulations stated that, in conducting a reduction in force, "[c]ompeting employees shall be classified on a retention register on the basis of their tenure of employment, veteran preference, length of service, and performance in descending order." 5 C.F.R. § 351.501(a) (1996). The regulations provided for "additional retention service credit for performance ... based on the employee's three most recent annual performance ratings of record received during the 4–year period prior to the date of issuance of reduction in force notices." *Id.* § 351.504(b)(1). "The additional service credit ... shall be expressed in additional years of service and shall consist of the mathematical average" of those three ratings. *Id.* § 351.504(d). A "highly successful" rating provides 16 years of additional service credit, and a "fully successful" rating 12 years. *Id.* §§ 351.504(d)(2), (3).

In calculating Veneziano's service retention credit, the Department used the average of the additional years reflected in her ratings for 1993, 1994, and 1995 – 16 years for each of the "highly successful" ratings (1993 and 1994) and 12 years for the "fully successful" rating (1995). This gave her 15 years of additional service credit, which placed her seventh among the nine persons at her competitive level. The employee who was sixth on the list had slightly less than six months more credit than Veneziano.

The Department decided to eliminate eight positions in the office where Veneziano worked, three of which would be at her competitive level. As a result, it informed Veneziano on October 30, 1996 that, because of a shortage of funds, her position would be abolished in the reduction in force, and because there were no positions to which she had a right of assignment, she would be separated on January 3, 1997.

D. *The Board Decision.* The Board affirmed the removal. In her initial decision, which became final when the Board

refused to review it, the administrative judge made the following rulings:

1. She held that the Department had proved that "it conducted the RIF for a reason authorized by OPM regulations."

2. She rejected Veneziano's contention that the calculation of her additional service credit was wrong because it incorporated the 1995 annual rating of "fully successful." Veneziano had alleged that this rating had numerous flaws and that the proper approach would be to average her "highly successful" ratings for 1992, 1993, and 1994, which would have raised the mathematical average of her ratings sufficiently to place her ahead of the person ranked sixth on the retention list at the time of the reduction in force. The administrative judge held that the 1995 rating satisfied the applicable regulations.

3. Veneziano also contended that, in violation of the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), her position was abolished in the reduction in force in retaliation for disclosing, in her memoranda, that the Department was not complying with Circular A–131. The administrative judge held that Veneziano's disclosures were not protected under that Act and that, even if they were, they did not play a role in the application of the reduction in force to Veneziano.

4. The administrative judge rejected Veneziano's argument that her position was abolished in the reduction in force because she had refused to follow an instruction that would have violated a law – Tavares's direction to send her data and her incomplete report to the Inspector General. The administrative judge concluded that Veneziano's submission of this material would not have violated any law because while "Circular A–131 contained a requirement for reporting to OMB[,][i]t contains no similar requirement for reporting to an agency's inspector general and [Veneziano] did not otherwise show how providing the report, as directed, would have violated the circular or other provision of law."

II

Veneziano stipulated before the board that the Department "had a budgetary need for conducting the [reduction in force]" and does not question the board's conclusion that the reduction in force was "conducted for a reason authorized by OPM regulations," namely, a "shortage of funds." She contends only that the application of the reduction in force to her was invalid because (A) her retention credits were improperly calculated due to the inclusion of her allegedly erroneous 1995 performance rating; (B) she was selected for removal in retaliation for protected disclosures about the Department's noncompliance with Circular A–131; and (C) her removal also was in retaliation for her refusal to carry out Tavares's instructions to submit incomplete data to the Department's Inspector General.

■ A.1. Veneziano's rating for 1995 was issued by Earl, who had been her supervisor in Washington, D.C. from June 12, 1995 to September 3. She contends that because Earl had been her supervisor for only 84 days, his rating her violated a Department regulation that specified that "[t]he minimum appraisal period is 90 calendar days." Department of Energy Order 3430.3A, Ch. 1, ¶ 6(a) (1986). As the administrative judge held, however, that provision does not provide that the rater must have been the employee's supervisor for 90 days, but only that the rating itself must have been based on a 90–day appraisal period. Veneziano's evaluation for 1995 was based upon an appraisal period of more than six months – from June 12, 1995 to December 31, 1995 – and therefore satisfied the regulatory mandate. There is no statutory or regulatory requirement that the rater must have served as the rated employee's supervisor for the entire period.

■ 2. Veneziano also contends that the Department improperly failed to give her an "advisory summary rating" for her service in the state of Washington for the first five and one-half months of 1995, as the Department regulations required. De-

partment of Energy Order 3430.3A, Ch. I, ¶ 7(e) ("Supervisors shall prepare an advisory summary rating when an employee transfers ... to another DOE position during the appraisal period, if the employee has met the minimum requirements for a rating in the position that is being vacated."). That rating, however, would have been merely "advisory," and Veneziano has not shown that, had it been provided, it would have changed the "fully successful" rating Earl gave her for 1995, based on his supervision of her work at Department headquarters. This alleged error has not been shown to be prejudicial.

■ 3. Our approval of the Department's use of Veneziano's 1995 performance appraisal in conducting the reduction in force is further supported by OPM regulations that govern reductions in force. Those regulations stated that only "[a]nnual performance ratings of record" shall be used as the basis for granting additional retention service credit in a reduction in force. 5 CFR § 351.504(a)(1). Section 351.203 defined "[a]nnual performance rating of record" as "an official performance rating under a performance appraisal system approved by OPM in accordance with 5 U.S.C., chapter 43." Subsection 504(b)(3) states: "To be creditable for purposes of this subpart, a rating must have been issued to the employee, with all appropriate reviews and signatures, and must also be on record (e.g., the rating is available for use by the office responsible for establishing retention registers)."

We agree with the administrative judge that Veneziano's 1995 rating met all of these requirements, and therefore constituted a "creditable" "[a]nnual performance rating of record." Veneziano raised no question about that rating and did not attempt to challenge it. All of the grounds upon which she now objects to that rating existed at the time she received it and were not concealed from her. The Department reasonably could have concluded that she accepted the rating and properly relied upon that rating in conducting the reduction in force.

■ B. In rejecting Veneziano's claim under the Whistleblower Protection Act, the administrative judge ruled that she had not shown either of the necessary elements under that Act: she had shown neither a protected disclosure nor that the adverse action against her was taken in retaliation for that disclosure. We need not consider the first of these rulings, however, since Veneziano has not established that her selection for removal under the reduction in force was made in retaliation for her disclosures that the Department was not complying with Circular A–131.

In attempting to show that her disclosures were a "contributing factor" to the adverse action against her – the statutory standard for determining whether the action was retaliatory, see 5 U.S.C. § 1221(e)(1)—Veneziano relies upon the allegedly short time between the disclosure and her notice of removal and the knowledge of that disclosures by Tavares, who played an important role in deciding what positions would be eliminated, as establishing that the disclosures were contributing factors. The Act provides that "[t]he employee may demonstrate that the disclosure was a contributing factor in the personnel action through circumstantial evidence, such as evidence that – (A) the official taking the personnel action knew of the disclosure; and (B) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action." *Id.*

In the usual whistleblowing case, where individualized adverse action is taken against an employee within a short time of the protected disclosure, depending upon the circumstances it may be reasonable to infer cause and effect. In the present case, however, the alleged shortness of the interval between the disclosures and the removal resulted from the timing of the reduction in force itself and not its implementation against Veneziano. Since Veneziano does not challenge the reduction in force, but only its application to her, her causation claim based on temporal proximity necessarily fails.

In any event, the government refuted Veneziano's causal claim. The administrative judge stated:

> Tavares and other agency officials testified that positions were selected for abolishment based on the projected workload requirements. The appellant's position was one of four general engineer positions selected for abolishment. After the selections had been made, the personnel office determined how the incumbents of the selected positions would be affected. Because Tavares did not have knowledge of whether the appellant would exercise assignment rights or be separated by [the reduction in force], he did not have the opportunity to target the appellant for separation.... I conclude that appellant has not met her burden of proving that her disclosures were a contribut[ing] factor in the [reduction in force].

Although the administrative judge did not explicitly determine that Tavares and the other agency officials were credible witnesses, that finding was implicit in her acceptance of their testimony. This testimony refutes Veneziano's contention that her disclosures were a contributing factor to the adverse action against her.

■ C. Veneziano makes the related argument that the application of the reduction in force to her was made in retaliation for her " 'refus[al] to obey an order that would require [her] to violate a law.' " § 2302(b)(9)(D). She refers to Tavares's instruction to her to submit to the Department Inspector General the incomplete data she had about the Department's valve engineering activities.

The administrative judge correctly concluded that Veneziano "did not ... show how providing the report, as directed, would have violated the circular or other provision of law." Veneziano's own testimony supports this conclusion. In her words, Tavares told her to "[j]ust send the data now and footnote that I'd send more data later." Veneziano has not identified any law she would have broken if she had sent in even unverified data. As the administrative judge ruled, the OMB Circular and its reporting requirements, upon which she relied, do not apply to a submission to the Department Inspector General.

### III

■ Veneziano contends that the administrative judge erroneously refused to permit her to present testimony by two witnesses. We review such refusal for abuse of discretion. *See Curtin v. Office of Personnel Mgt.* 846 F.2d 1373, 1378 (Fed.Cir. 1988).

■ Veneziano argues that she should been have allowed to present testimony by David Muzio, an OMB employee present at the March 1996 meeting, and Gregory Friedman, an employee of the Inspector General. She asserts that Muzio, would "testify that the [Department] was not in compliance with OMB Circular A–131 and ... about his conversations with both ... Veneziano and ... Tavares," and that Friedman would have testified "about the [Inspector General's] audit of the [Department's] compliance with OMB Circular A–131."

■ This additional testimony, however, appears cumulative and would have added little, if anything, to the evidence of record relating to the issues involved. Veneziano has not shown how that additional testimony would have been likely to produce a different result in this case. The administrative judge has broad discretion in determining how many and which witnesses should be permitted to testify. She did not abuse her discretion in this case in excluding the testimony of Muzio and Friedman.

### CONCLUSION

The decision of the Merit Systems Protection Board is

*AFFIRMED.*