**Carlton L. SMITH, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE,**
**Respondent.**

No. 01–3377.

United States Court of Appeals,
Federal Circuit.

June 5, 2002.

Rehearing Denied July 31, 2002.

Before CLEVENGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

## DECISION

PER CURIAM.

Carlton L. Smith petitions for review of the final decision of the Merit Systems Protection Board ("Board") that affirmed his removal from employment with the United States Postal Service ("agency") for failure to maintain a regular work schedule. *Smith v. Postal Service,* CH–0752–99–0111–I–3 (July 19, 2001). We *affirm.*

## DISCUSSION

### I.

Mr. Smith was employed as a custodial laborer with the agency's Carbondale, Illinois Post Office. During the period between January 21, 1997, and April 28, 1997, he was on approved sick leave. However, on April 28th, he was placed in leave without pay ("LWOP") status. While he was in LWOP status, Mr. Smith was required to provide medical documen-

tation every thirty days indicating whether he could return to work. For nine months, beginning in May of 1997, Mr. Smith furnished the agency with the required documentation in the form of short notes from his doctor. The notes stated that Mr. Smith was taking medication and was unable to work. The last note that the agency received from Mr. Smith's doctor was dated January 18, 1998.

On April 29, 1998, the agency informed Mr. Smith that he had to provide updated medical documentation in order to justify his continued absence from work. Thereafter, despite meeting with agency officials and being given two extensions of time, Mr. Smith failed to provide the required documentation.

It is agency policy that an employee may be placed in LWOP status due to personal injury or illness. However, the employee must provide medical documentation to support approval for such status. In addition, after an employee has been in LWOP status for more than a year, the employee may be separated from his or her position unless there is an expectation that the employee will return to work within a reasonable time. On October 5, 1998, after Mr. Smith had been in LWOP status for over seventeen months, he was notified that the agency proposed to remove him because it did not appear that he would ever resume his duties as a full-time employee. Mr. Smith was removed from his position on October 16, 1998.

Mr. Smith appealed his removal to the Board. On November 22, 2000, following a hearing, the administrative judge ("AJ") to whom the case was assigned sustained the agency's action. The AJ found that, in view of Mr. Smith's absence from work from April 29, 1997, through October 5, 1998, the agency had established by a preponderance of the evidence that he had failed to maintain a regular work schedule.

*See* 5 U.S.C. § 7701(c)(1)(B) (2000) ("the decision of the agency shall be sustained . . . only if the agency's decision . . . is supported by a preponderance of the evidence."). In addition, the AJ rejected Mr. Smith's various affirmative defenses and concluded that Mr. Smith's removal would promote the efficiency of the service and was reasonable.

On July 19, 2001, the AJ's initial decision became the final decision of the Board when the full Board denied Mr. Smith's petition for review for failure to meet the criteria for review set forth at 5 C.F.R. § 1201.115. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or not supported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed.Cir.1998). Mr. Smith raises several arguments on appeal. We address them in turn.

■ Mr. Smith's first contention is that he was denied due process because the AJ barred his proposed witnesses from testifying. Initially, Mr. Smith requested that the AJ hear testimony from nineteen witnesses. On two separate occasions before the hearing, the AJ considered and rejected Mr. Smith's request, on the ground that Mr. Smith had not identified any material and relevant issue to which the witnesses would testify. Mr. Smith then requested that the testimony of an additional thirteen

witnesses be taken. Again, the AJ denied the request, stating that Mr. Smith had failed to identify the specific issues with respect to which these proposed witnesses would testify.

We review the Board's evidentiary rulings under an abuse of discretion standard. *See Veneziano v. Dep't of Energy*, 189 F.3d 1363, 1369 (Fed.Cir.1999) ("The administrative judge has broad discretion in determining how many and which witnesses should be permitted to testify.") In order to show an abuse of discretion in the refusal to permit the testimony of a particular witness, a petitioner must show that the witness' testimony would have added something material to the record. *See id.; Davis v. Office of Pers. Mgmnt.*, 918 F.2d 944, 946 (1990). On appeal, Mr. Smith still fails to identify the relevant factual or legal questions which the testimony of any of his witnesses would have addressed. Accordingly, he has not shown any harm which resulted from the omission of his proposed witnesses' testimony. We therefore conclude that the AJ did not abuse his discretion in not permitting Mr. Smith's proposed witnesses to testify.

■ Mr. Smith also argues that the Board erred in rejecting the affirmative defense that he was removed for having filed grievances and discrimination complaints in the past. In considering this issue, the AJ noted that Mr. Smith was required to establish (1) that he engaged in protected activity; (2) that the official accused of retaliation knew of that activity; (3) that, under the circumstances, the action under review could have been retaliatory; and (4) that there was a genuine nexus between the retaliation and the agency's action. *See Webster v. Dep't of Army*, 911 F.2d 679, 689 (Fed.Cir.1990) The AJ found that there was undisputed evidence that Mr. Smith had filed numerous grievances and discrimination complaints. However, in concluding that Mr. Smith's dismissal was not retaliation, the AJ relied on the testimony of Bob Gryzmala. Mr. Gryzmala was the Carbondale Postmaster. He denied Mr. Smith's request for additional leave under the Family Medical Leave Act and made the decision to remove him from his position. Mr. Gryzmala testified that his decision to remove Mr. Smith was based solely on Mr. Smith's extended absence and that the grievances filed by Mr. Smith did not influence his decision. The AJ noted that Mr. Gryzmala was not the subject of any of Mr. Smith's complaints and that, therefore, no motive for retaliation was apparent. This lack of motive, in combination with the fact that the seventeen month absence provided compelling reason for the agency to remove Mr. Smith, led the AJ to conclude that Mr. Smith had not met his burden of proving that his separation was due to retaliation for a protected activity.

On appeal, Mr. Smith argues that the AJ failed to consider evidence of retaliation. Specifically, he contends that the AJ erroneously concluded that there was no motivation to retaliate because he overlooked testimony suggesting that Mr. Gryzmala (who made the removal decision), Gordon Walker (the former Supervisor of Mr. Smith), and Ron Black (the Maintenance Supervisor) were targeted by Mr. Smiths' previous grievances and complaints. However, while Mr. Smith does allege several facts which link Mr. Walker and Mr. Black to an earlier grievance and arbitration, he does not set forth any facts which indicate that Mr. Gryzmala was involved in any prior grievance or discrimination claims. With respect to Mr. Gryzmala, Mr. Smith merely alleges that Mr. Gryzmala was at one point scheduled to testify in a hearing in relation to one of Mr. Smith's grievances but then did not testify. This fact hardly suggests that the

Board's finding that Mr. Gryzmala was not the *subject* of a grievance was incorrect.

■ Finally, Mr. Smith argues that the AJ incorrectly concluded that the agency's failure to provide him with a Form CA–17 was not harmful error. A Form CA–17 is a form used by the Office of Workers' Compensation Programs to assess whether an employee who has suffered a work-related injury can be accommodated with limited duties that do not interfere with the employee's medical restrictions. The AJ rejected Mr. Smith's argument because he determined that the CA–17 form was only used by the agency in the context of work-related injuries, and Mr. Smith's injury was not alleged to be work-related.

Mr. Smith contends that provisions of the Employee and Labor Relations Manual ("ELM") require the agency to inform him of rights and benefits under the Federal Employees Compensation Act ("FECA"), including use of the CA–17 form. However, the ELM provisions suggest that the CA–17 form is only used in the context of the FECA, which is applicable only to employees suffering a work related injury. *See* 5 U.S.C. § 8102 (2000). The provisions of the ELM to which Mr. Smith cites in his brief do not require the use of the CA–17 form in connection with LWOP status for personal illness unrelated to work activity. Employee and Labor Relations Manual § 514 (2001). The AJ did not err in concluding that the agency had not violated its procedures.

For the foregoing reasons, the final decision of the Board is affirmed.

Each party shall bear its own costs.