**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2014 MSPB 78**

Docket No. SF-0752-13-2120-I-1

**Valentino Lopez,[1]**

**Appellant,**

**v.**

**Department of the Navy,**

**Agency.**

October 2, 2014

Royal Carroll, Honolulu, Hawaii, for the appellant.

James J. Schubert, Esquire, and Lori Chang, Joint Base Pearl Harbor-
Hickam, Hawaii, for the agency.

NAVFAC Hawaii, Joint Base Pearl Harbor, Hawaii, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The appellant has petitioned for review of an initial decision that affirmed
the agency's furlough action.  For the following reasons, we conclude that the
petitioner has not established a basis under 5 C.F.R. § 1201.115 for granting the

---

[1] Pursuant to 5 C.F.R. § 1201.36(a), this appeal was part of a consolidation, *NAVFAC
Employees – Hawaii v. Department of the Navy*, MSPB Docket No. SF-0752-14-0265-
I-1.

petition for review. We therefore DENY the petition for review and AFFIRM the initial decision AS MODIFIED by this Opinion and Order, still affirming the furlough action.[2] The initial decision is MODIFIED by providing additional support for the administrative judge's determination that the agency met its burden of proving that the furlough promoted the efficiency of the service.

BACKGROUND

¶2 The agency issued a decision notice furloughing the appellant for no more than 11 work days from his WG-10 Utility Systems Repairer-Operator (USRO) position based on "the extraordinary and serious budgetary challenges facing the Department of Defense (DoD) for the remainder of Fiscal Year (FY) 2013, the most serious of which is the sequester that began on March 1, 2013," i.e., across-the-board reductions to federal budgetary resources caused by the Budget Control Act of 2011, as amended by the American Taxpayer Relief Act of 2012. *NAVFAC Employees – Hawaii v. Department of the Navy*, MSPB Docket No. SF-0752-14-0265-I-1, Consolidated Appeal File (CAF), Tab 18 at 22-24, 29-31; *Lopez v. Department of the Navy*, MSPB Docket No. SF-0752-13-2120-I-1, Initial Appeal File (IAF), Tab 2 at 1, 8. It appears that the agency ultimately furloughed the appellant for 6 days. CAF, Tab 18 at 13-14, 16-18, 20 (time and attendance report showing 6 dates with the time code "KE").

¶3 On appeal to the Board, the appellant asserted that the agency based the action on his national origin (Mexican) and status as a 30 percent or more disabled veteran. IAF, Tab 1 at 6. The appellant also asserted that his command

_____

[2] In affirming the initial decision we have addressed only those arguments raised by the appellant on petition for review. *See* 5 C.F.R. § 1201.115 (the Board normally will consider only issues raised in a timely-filed petition for review or cross petition for review). Because the appellant has not, for example, challenged the administrative judge's rejection of the appellants' argument that the agency should not have furloughed them because their salaries were paid through working-capital funds, rather than direct appropriations, we do not address that finding at this time.

is a working-capital-funds service, as defined by 10 U.S.C. § 2208, that is funded through charges and reimbursements for goods and services rendered to other activities and not through appropriated funds. IAF, Tab 2 at 6. He alleged that employees of commands that are funded through working-capital funds are considered "indirectly funded Government Employees," and that, under 10 U.S.C. § 129, funds available to be paid to indirectly funded government employees of DoD may not be controlled under any policy of the Secretary of a military department for control of civilian manpower resources. *Id*. The appellant further argued that his proposal notice incorrectly cited as grounds for his furlough a reduction in base budget funding for the Operation and Maintenance accounts, as directed by the Budget Control Act of 2011, and as amended by the American Taxpayer Relief Act of 2012, even though he was funded by working-capital funds. *Id*.

¶4        The administrative judge consolidated this appeal with other appeals from various appellants with similar issues, circumstances, and/or defenses. CAF, Tabs 1-2. After a hearing, the administrative judge affirmed the furlough actions in a consolidated initial decision. CAF, Tab 24, Initial Decision (ID) at 1, 15. The administrative judge found that the agency proved that the furloughs promoted the efficiency of the service because the furloughs were a reasonable management response to the sequestration. ID at 3-4. The administrative judge found unpersuasive the appellants' argument that DoD's budget situation was irrelevant because the Department of the Navy had adequate funding to avoid the furloughs. ID at 4. The administrative judge held that it was reasonable for DoD to consider its budget situation holistically, rather than isolating each military department's situation, because DoD had the authority to transfer appropriated or working-capital funds from one account to another. ID at 4. In addition, the administrative judge found it undisputed that sequestration caused sharp cuts to the Department of the Navy's accounts and that the agency therefore had a legitimate need to find ways to cut its spending. ID at 4. Thus, the

administrative judge held that the agency need not have proven that there was an actual deficit—in the sense that it literally could not pay its employees their full salaries without violating the Antideficiency Act—to justify the furlough; rather, it need only have shown that the furloughs were a reasonable response to the financial situation. ID at 4.

¶5        The administrative judge further found unpersuasive the appellants' argument that they should not have been furloughed because their salaries were paid through working-capital funds rather than direct appropriations. ID at 5. The administrative judge held that DoD had some authority to "tap its working capital funds if it needed money for other purposes; it therefore was appropriate for the agency to try to conserve the working-capital funds so that they could be drawn upon if needed to meet more urgent needs." ID at 5. The administrative judge noted that the agency submitted unrebutted evidence that, because of sequestration, agency components funded through appropriations were planning to reduce their orders for working-capital-fund activities; therefore, unless working-capital-fund activities reduced their operating costs, they risked running deficits. ID at 5. The administrative judge held that the agency had a legitimate reason to include working-capital-fund employees in the furloughs because furloughing those employees was expected to save more than $500 million. ID at 5.

¶6        The administrative judge further found that the agency determined which employees to furlough in a fair and even manner, offering evidence that it imposed the furloughs uniformly on all civilian employees with a limited set of exceptions, and generally providing reasonable explanations for the exceptions. ID at 6.[3] The administrative judge noted that, although many of the appellants

---

[3] The administrative judge and the agency appear to have used the terms "exceptions" and "exemptions" interchangeably. *See, e.g.*, ID at 6; CAF, Tab 4 (United States Department of the Navy Administrative Record, FY 2013 Furlough Appeals), Part 1

challenged the exemption of employees who worked directly for the Navy shipyard, the agency exempted these employees because it would be particularly difficult to make up delays in maintenance work on nuclear vessels, and these vessels were critical to mission success. ID at 6. Further, although the exemption apparently included not just the employees actually performing the maintenance work but also the administrative and professional staff that supported their work, such as three attorneys employed by the Pearl Harbor shipyard who were exempted, the administrative judge found that the appellants were not similarly-situated to the shipyard employees because the shipyard was in an organizational unit from the Naval Facilities Engineering Command, and thus in a separate competitive area. ID at 6-7. Alternatively, the administrative judge held that, even if the appellants were similarly situated to the shipyard employees, the agency's reason for exempting the shipyard employees—the need to avoid maintenance delays for nuclear vessels—was a legitimate management reason for the disparate treatment. ID at 7. The administrative judge determined that, because the agency was exempting the actual workers on the vessels, it was reasonable for the agency to anticipate that the need for support services, such as legal work, would remain higher for the shipyards and therefore to exempt the employees who provided those services as well. ID at 7-8.

¶7      The administrative judge noted that the appellant was part of a group of USROs who were required to provide around-the-clock coverage and that the agency normally did this by staggering the scheduling of four teams of three

at 12, 14, 17 (Declaration of Robert T. Cali, Principal Deputy Assistant Secretary of the Navy (Manpower and Reserve Affairs), indicating that a decision was made to "except" several categories of employees from the furlough, and that in 270 instances deciding officials granted relief from the proposed furlough based on a determination that the position at issue was covered by an "exemption"). In this decision, we will generally use the terms "except" and "exception," *see* CAF, Tab 4 (United States Department of the Navy Administrative Record, FY 2013 Furlough Appeals), Part 1 at 105-08 (May 14, 2013 memorandum from the Secretary of Defense referring to "exceptions" from the furlough), unless we are quoting or paraphrasing a source in the record.

employees each (one work leader and two USROs). ID at 8. During the furlough period the agency concluded that it could manage with teams of two (one leader and one USRO), and decided to exempt just the four work leaders and the four most senior USROs, as determined by their service computation dates. ID at 8. The appellant, who had the lowest service computation date, was furloughed for 6 days. ID at 8. The administrative judge found that, although the appellant was similarly situated to the four USROs who were exempt from the furlough because they all worked in the same position at the same location for the same organizational unit, the agency offered a legitimate management reason for furloughing the appellant while exempting the other USROs. ID at 8. The administrative judge held that, once the agency determined that it could cover the schedule with just four nonfurloughed USROs, it was appropriate for the agency to furlough the rest, and it was permitted to use a neutral criterion like service computation date to select the affected employees. ID at 9. The administrative judge further held that there was no evidence that the agency chose this criterion specifically to target or exempt any particular employees and that the agency also used seniority to determine the furloughs for other work groups that required around-the-clock coverage. ID at 9.

¶8        Moreover, the administrative judge noted that the agency's decision to exempt four USROs and furlough the rest, rather than create a schedule that provided around-the-clock coverage but still furloughed each USRO for the same number of hours, was a matter within the agency's discretion. ID at 9. In this regard, the administrative judge analogized furloughs to reductions in force (RIFs), holding that an agency in a RIF is permitted to "impose the brunt of the loss on a single employee even when it might be possible to spread the burden more evenly." ID at 9. Thus, the administrative judge held that, if an agency has two employees performing a particular job but needs only one of them, it is entitled to furlough or separate by RIF the employee who is lower on the retention register rather than putting both employees on part-time schedules or

furloughing them sequentially. ID at 9-10. The administrative judge found that, as long as the agency uses fair criteria as it did here, there was no reason why the agency should not be allowed to do the same in the much less drastic context of a short furlough. ID at 10.

¶9      Finally, the administrative judge found, among other things, that the appellants did not prove harmful error, a violation of their constitutional right to due process, national origin discrimination, retaliation for protected activity, or discrimination based on military service. ID at 11-15.

## ANALYSIS

¶10      The appellant asserts on review that the administrative judge incorrectly found that the agency was obligated to furlough employees to the extent possible, even though the appellant's position was identified as exempt from the furlough as necessary to protect safety, life, or property. Petition for Review (PFR) File, Tab 1 at 7-8. In this regard, he contends that the document the administrative judge relied upon to support this finding is silent as to the extent the agency was expected to furlough employees who fell within a defined exception. *Id*. at 8.

¶11      One of the DoD furlough exceptions to the plan to furlough civilian employees for a maximum of 88 hours provided that, "[i]n order to avoid harm to mission, those employees necessary to protect safety of life and property are excepted *to the extent necessary* to protect life and property." CAF, Tab 4 (United States Department of the Navy Administrative Record, FY 2013 Furlough Appeals), Part 1 at 108 (emphasis added). We find that this provided an exception from the furlough for those employees who occupied positions that were generally necessary to protect life and property only "to the extent" that it was necessary for such employees to protect life and property. *Id*. at 106 (May 14, 2013 memorandum from the Secretary of Defense indicating that "[w]e will except civilians . . . necessary to protect life and property (but only to the extent needed to provide that protection)"). It did not necessarily create a blanket

exception for all employees occupying such positions regardless of whether their exception was necessary to protect life and property. *Cf. id*. at 109; *Dye v. Department of the Army*, 121 M.S.P.R. 142, ¶ 7 (2014) (describing a categorical exemption from the furlough for "[a]ny" DoD employees who were not paid directly by accounts included in the DoD-Military budget, without qualifying language such as "to the extent necessary"). In other words, the exception quoted above, when read as a whole, appears to contemplate the possibility that employees occupying positions that are generally necessary to protect life and property could be excepted for only a portion of a planned furlough, i.e., to the extent necessary, or that some employees occupying positions that are generally necessary to protect life and property could be excepted while others would not be excepted. *Cf. Jonson v. Federal Deposit Insurance Corporation*, 121 M.S.P.R. 56, ¶ 12 (2014) (under a fundamental rule of statutory construction, the Board must give effect, if possible, to every clause and word of a statute so as to avoid rendering superfluous any of its language). Thus, to the extent that the appellant is asserting that the agency excepted all USROs from the furlough regardless of whether such employees were all necessary to protect life and property, we disagree. The record supports the administrative judge's finding that the relevant exception applied only "to the extent necessary" to protect life and property.

¶12　　The appellant also disagrees with the administrative judge's determination that it was within the agency's discretion to furlough only three of the seven USROs due to scheduling difficulty and its inability to avoid overtime. PFR File, Tab 1 at 8. In this regard, the appellant contends that the administrative judge ignored the testimony of an agency manager, Preston Iha, that no alternate furlough plan was developed, discussed, or considered, and that he had never heard of the term "fairly and equally" and did not know that he had an obligation to furlough similarly-situated employees fairly and equally. *Id*. at 8-9.

¶13　　Mr. Iha testified that the Assistant Secretary of the Navy was responsible for deciding who to furlough. *See* Hearing Compact Diskette (HCD) (testimony

of Preston Iha). Contrary to the appellant's assertion, Mr. Iha also testified that he *had* heard of the term "fair and equal" in connection with a furlough but that no one had explained to him "in detail" what that term meant. *Id*. In addition, Mr. Iha testified that the agency used the employees' service computation dates as part of its effort to make the furlough fair and equal. *Id*. In any event, regardless of what Mr. Iha knew or believed regarding the term "fair and equal," it is the Board's responsibility to determine whether the agency in fact has met its burden of proving by preponderant evidence that the furlough promotes the efficiency of the service by showing that it applied its determination as to which employees to furlough in a "fair and even manner," i.e., uniformly and consistently. *Chandler v. Department of the Treasury*, [120 M.S.P.R. 163](), ¶ 8 (2013).

¶14     The appellant further contends that the administrative judge did not follow the Board's determination in *Chandler* that similarly-situated employees must be treated fairly and equally when he held that the agency could impose the brunt of a furlough, as it can do in a RIF, on a single employee even when it might be possible to spread the burden more evenly. PFR File, Tab 1 at 10-16. The appellant appears to allege that the agency should have spread the total hours of the furlough across all USROs, rather than furloughing several of those with the lowest service computation dates. *Id*. at 13-14. He further asserts that the agency did not establish a legitimate management reason for failing to treat USRO employees fairly and equally because, contrary to the testimony of an agency manager that it would be difficult to fairly and equally distribute furlough hours among all USROs due to the difficulty in changing the employees' schedules and avoiding overtime payment, all USRO schedules were in fact changed regardless of who was furloughed, and a USRO work leader testified that "due to the built in overtime in the USRO's schedules that it was necessary for the agency to change all USRO schedules regardless of whether the USRO was being furloughed or not." *Id*. at 16-18. Thus, the appellant contends that the agency's decision to

furlough only some of its USROs did not avoid potentially complicated rescheduling but instead made the scheduling for the furlough period more complicated by creating two classes of employees. *Id*. at 17.

¶15 An agency satisfies the efficiency of the service standard in a furlough appeal by showing, in general, that the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a "fair and even manner." *Chandler*, 120 M.S.P.R. 163, ¶ 8. The Board has held that "fair and even manner" means that the agency applied the adverse action furlough uniformly and consistently, "just as it is required to apply a RIF." *Id*. This does not mean that the agency is required to apply the furlough in such a way as to satisfy the Board's sense of equity. *Id*. Rather, it means that the agency is required to treat similarly-situated employees similarly and to justify any deviations with legitimate management reasons. *Id*. What the efficiency of the service determination encompasses are issues relating to the uniform and consistent application of the furlough, including whether the agency used a furlough to target employees for personal reasons or attempted to exempt certain employees from the furlough without legitimate management reasons. *Id*., ¶ 9.

¶16 We agree with the administrative judge's analysis of this issue, which relied upon general RIF principles. *See supra* ¶¶ 7-8; *see also Chandler*, 120 M.S.P.R. 163, ¶ 7 (RIF principles are instructive in determining the scope of the Board's review of adverse action furloughs and what it means for a furlough of 30 days or less to be taken for the efficiency of the service). As the Board held in *Chandler*, 120 M.S.P.R. 163, ¶ 8, the question is whether the agency applied the adverse action furlough uniformly and consistently. Moreover, in determining whether the agency structured a furlough in a fair and even manner, the Board will not scrutinize an agency's decision in such a way that second guesses the agency's assessment of its mission requirements and priorities. *Department of Labor v. Avery*, 120 M.S.P.R. 150, ¶ 10 (2013). Here, the agency

made a determination that it needed only two individuals per shift to protect property, health, and safety during the furlough, rather than the usual three. IAF, Tab 15 at 7, 9-11; *see* HCD (testimony of Curtis Noborikawa). The appellant does not challenge this determination that only two individuals were needed, which was well within the agency's discretion. *See Veneziano v. Department of Energy*, 189 F.3d 1363, 1365-66 (Fed. Cir. 1999) (affirming the appellant's separation by RIF where the agency decided to eliminate eight positions in the office where the appellant worked, three of which would be at her competitive level); *see also Griffin v. Department of Agriculture*, 2 M.S.P.R. 168, 171 (1980) (the decision whether a particular position is to be preserved or abolished is for the agency to make).

¶17    Once the agency determined the number of USRO positions it needed to keep filled during the furlough, it used a uniform and consistent criteria, service computation date, in deciding which employees to furlough, just as it would have been required to do in a RIF. *See Chandler*, 120 M.S.P.R. 163, ¶ 8; *see also U.S. Merit Systems Protection Board v. Federal Labor Relations Authority*, 913 F.2d 976, 979-80 (D.C. Cir. 1990) (length of service, unlike bargaining unit membership, is a retention factor that permits an agency to apply secondary assignment rights uniformly and consistently); *American Federation of Government Employees, AFL-CIO v. Office of Personnel Management*, 821 F.2d 761, 764-65 (D.C. Cir. 1987) ("When a RIF occurs, employees are generally laid-off according to their seniority—employees with fewer years of service lose their positions before employees with more years of service."); 5 C.F.R. § 351.501(a). Thus, as the administrative judge suggested in his initial decision, the legitimate management reason for the difference in treatment was, in the first instance, the appellant's lower service computation date. ID at 9-10. Although there may have been other ways in which to structure the furlough that could have satisfied the appellant's or the Board's sense of equity, the agency is not required

to furlough its employees in those alternative ways. *See Chandler*, 120 M.S.P.R. 163, ¶ 8.

¶18　　　Moreover, in an adverse action furlough, as in a RIF and in a directed reassignment, the Board's general review is to assure that such actions are used for legitimate reasons; therefore, the Board's focus is on the legitimacy of the reasons for the furlough, RIF, or reassignment. *In re Tinker AFSC/DP v. Department of the Air Force*, 121 M.S.P.R. 385, ¶ 21 (2014). There is no indication or allegation by the appellant that the agency chose this criterion, service computation date, specifically to target or exempt any particular employees. *See* ID at 9; *cf. Phelps v. Department of Labor*, 25 M.S.P.R. 30, 32 (1984) (the agency's granting of an opportunity to obtain an unscheduled performance appraisal to some employees while denying it to others resulted in the denial of uniform and consistent application of RIF provisions). In fact, the record indicates that the facilities manager who authorized the reduction of the USRO teams to two-person teams during the furlough testified that he was not aware of the service computation dates of the affected employees when he decided to use this method to determine who would be furloughed and that service computation dates had been used in the decision to furlough other non-USRO employees, as well as in RIFs and decisions to fill critical vacant positions. *See* HCD (testimony of Curtis Noborikawa); *see also* IAF, Tab 18 at 4.

¶19　　　Although the appellant contends on review that the agency did not establish a legitimate management reason for failing to treat the USROs fairly and equally because all USRO schedules had to be changed anyway, and the agency could have changed the schedules to distribute the furlough hours equally without excepting any USROs from the furlough, the mere fact that the agency had to change schedules due to the furlough does not affect the level of difficulty involved in creating schedules with different objectives. Mr. Iha testified that, although anything is possible, it would have been an administrative burden and a "nightmare" to come up with the schedule suggested at the hearing by the

appellant.  *See* HCD (testimony of Preston Iha).  Although a USRO called by the appellant testified that the agency could have furloughed each USRO 4 hours per week or one 8-hour shift per week, it is not clear how this proposal would have affected overtime payments to USROs, which the agency had sought to reduce, and this USRO admitted that creating schedules was not part of his job duties.  *See id*. (testimony of Thomas Kam).  In any event, we have found that the appellant's service computation date served as a legitimate management reason for his different treatment.  We therefore agree with the administrative judge that the agency had the discretion to determine whether to except four USROs and furlough the rest or attempt to create a schedule under which none of the USROs would be excepted from the furlough with all of them furloughed for the same number of hours.  *See* ID at 9-10.

¶20	Accordingly, we AFFIRM the agency's furlough action in this case.  Finally, we agree with the administrative judge that the appellant failed to prove his affirmative defenses.  *See* ID at 11-15.

## ORDER

¶21	This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

### Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to

representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.