NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOE M. JIMENEZ, JR.,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2016-1832

---

Petition for review of the Merit Systems Protection Board in No. DA-1221-13-0323-W-2.

---

Decided: November 7, 2016

---

JOE M. JIMENEZ, JR., San Antonio, TX, pro se.

CORINNE ANNE NIOSI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER.

---

Before MOORE, WALLACH, and STOLL, *Circuit Judges.*

PER CURIAM.

Joe M. Jimenez, Jr. appeals the decision of the Merit Systems Protection Board denying him relief for an employment action taken by the Department of Veterans Affairs ("V.A."). The Board held that Mr. Jimenez met his burden of showing that certain disclosures he made were protected under the Whistleblower Protection Act and contributed to his reassignment. The Board further held, however, that the Government successfully rebutted Mr. Jimenez's prima facie case of reprisal for whistleblowing by showing independent causation for the employment action. Because substantial evidence supports the Board's decision, we affirm.

## BACKGROUND

Mr. Jimenez worked as a Nuclear Medicine Technologist for the V.A., where his job duties included injecting patients undergoing PET/CT scans with radiological substances. During a November 21, 2011, injection Mr. Jimenez conducted the radiological substance Flourine 18 escaped from its tubing and struck a patient's arm and clothing. The Chief of Nuclear Medicine at the facility where Mr. Jimenez worked testified that the patient approached him later that day about the spill and explained that Mr. Jimenez did not clean the spill or show concern over it. The Chief memorialized his interaction with the patient in a memorandum he drafted the same day. Mr. Jimenez's direct supervisor investigated the incident and, as reflected in a memorandum he drafted several days after the spill, determined that radioactive material had been detected on the patient's clothing and in the general area where the spill had occurred. The memorandum further stated that Mr. Jimenez did not report the spill to his direct supervisor or to the radiation safety officer.

Following the investigation, the V.A. proposed Mr. Jimenez's removal in a letter dated December 23,

2011, for "Endangering the Patient's Health and Safety of Others" and for "Failure to Observe Precautions for Containment and Contamination of a Radioactive Material." Mr. Jimenez responded both in writing and orally, but the V.A. issued Mr. Jimenez's final notice of removal on February 22, 2012, effective March 5, 2012.

Mr. Jimenez brought a Whistleblower Protection Act ("WPA") claim before the Merit Systems Protection Board.[1] Mr. Jimenez averred that the removal action was retaliatory in nature, citing several disclosures he alleged were protected under the WPA. Mr. Jimenez asserted that he had cooperated with an Office of Special Counsel investigation that was spurred by the complaint of a coworker at his facility regarding the handling of nuclear materials there. Mr. Jimenez further alleged that he disclosed this cooperation to Human Resources and his superiors, seeking whistleblower protection, in a letter dated December 22, 2011. Mr. Jimenez also indicated that on October 7, 2011, and December 10, 2011, he had reported safety concerns regarding patient and employee radiation exposure. Finally, Mr. Jimenez indicated that he had filed a complaint with the Office of Special Counsel on March 1, 2012, regarding the handling of nuclear materials at his facility and alleging that he informed Human Resources of these handling practices on or about February 7, 2012. Some of Mr. Jimenez's disclosures criticized actions of his direct supervisor.

---

[1] There were several procedural complications with Mr. Jimenez's case before it was properly before the Board for consideration, the details of which are not relevant here and are set forth in the Board's decision. *See Jimenez v. V.A.*, DA-1221-13-0323-W-2, 2016 WL 602580 (Feb. 12, 2016) (*Board Op.*), Supplemental Appendix ("S.A.") 36–39.

The Board concluded in its February 12, 2016, decision that Mr. Jimenez's October 7, December 10, and December 22, 2011, disclosures were protected under the WPA and that, under the 5 U.S.C. § 1221(e)(1) knowledge/timing test, these protected disclosures contributed to the decision to remove Mr. Jimenez, first proposed on December 23, 2011.[2]  The Board also concluded that the alleged February 7, 2012, disclosure did not contribute to his removal because it occurred after the removal action was already well underway.

The Board ultimately concluded, however, that the Government rebutted Mr. Jimenez's prima facie case of whistleblower reprisal because it showed by clear and convincing evidence that it would have removed Mr. Jimenez despite his protected disclosures.  The Board credited the Chief of Nuclear Medicine's hearing testimony regarding the spill incident, along with contemporaneous corroborating memorandums from the Chief and Mr. Jimenez's supervisor.  The Board also relied on the deciding official's hearing testimony and, like the Chief's testimony, found it credible, citing specific reasons.  The Board indicated that while Mr. Jimenez alleged that he had reported the spill, he introduced no supporting evidence.  Finally, the Board discounted Mr. Jimenez's argument that the V.A. had not disciplined other non-whistleblowers involved in this and similar spills.  The Board explained that none of the non-whistleblowers Mr. Jimenez relied on had the same disciplinary record as Mr. Jimenez, which included "reprimand for endangering a patient's health, loss of control of a radiopharmaceutical

---

[2]  We note that while the proposed removal letter was dated December 23, 2011, Mr. Jimenez admitted that by the deciding official sought the authority to remove Mr. Jimenez on December 19, 2011, *see* S.A. 143, which finds support in the record, *see* S.A. 71.

medicine, and failure to follow instructions." *Board Op.*, 2016 WL 602580, S.A. 47. Thus, the Board concluded that the Government proved by clear and convincing evidence that it would have removed Mr. Jimenez regardless of his protected disclosures.

Mr. Jimenez appeals to us, and we have jurisdiction under 5 U.S.C. § 7703(a)(1), (b)(1).

## DISCUSSION

### I.

At the outset, we address the Government's threshold argument that the Board did not have jurisdiction to hear this case. The Government avers that because Mr. Jimenez retired on March 2, 2012—before his March 5, 2012, effective removal date—the case is moot. In other words, the Government asserts that there could be no basis for the Board to grant Mr. Jimenez relief because Mr. Jimenez's removal never went into effect. The Government concedes that it did not present this argument to the Board. "[M]ootness . . . is a threshold jurisdictional issue," however. *Myers Investigative and Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002). Because "[a] challenge to the Board's jurisdiction may be made at any time, even on appeal," we have considered the Government's new argument. *Carley v. Dep't of the Army*, 413 F.3d 1354, 1356 (Fed. Cir. 2005).

We have previously held that when an employee voluntarily retires upon receiving a proposed notice of removal a claim based on that notice may be moot. *See Cruz v. Dep't of Navy*, 934 F.2d 1240, 1247 (Fed. Cir. 1991) (en banc). But that is not the case where, as here, before the employee retires there is a final, appealable V.A. action giving the employee the right to file a claim. *See Mays v. Dep't of Transp.*, 27 F.3d 1577, 1579 (Fed. Cir. 1994). As such, this case is not moot.

Indeed, the Government's mootness argument does not comport with our holding in *Mays*. In that case, the appellant, Ms. Mays, retired before her removal went into effect. *Id.* at 1577–78. Specifically, "[o]n October 7, 1992, the agency proposed that Mays be removed from her position," and subsequently, "Mays submitted both a written and an oral response to the proposed adverse action." *Id.* "On December 1, 1992, the agency informed Mays by letter that 'you will be removed from your position effective the close of business 4 December 1992.'" *Id.* at 1578. The letter also "set forth Mays' appeal rights." *Id.* After receiving that letter, Ms. Mays retired on December 4, 1992 and subsequently filed an appeal regarding her removal. The Government argued there, as it does here, that there was no jurisdiction because Ms. Mays retired before her removal went into effect. *Id.* at 1579.

We disagreed. We held that, because "[t]he agency made a final decision and took action when it issued the decision letter" and because Ms. Mays's "removal was no longer 'proposed' in the normal sense of the word or as that word is used in *Cruz*," Ms. Mays's case was not moot. *Id.* at 1580. We further explained in *Mays* that it was "a case involving removal," as evidenced by Ms. Mays's SF-50 retirement form "stating in the remarks section, '[r]etired after receiving written notice on 12–01–92 of decision to separate for unacceptable performance.'" *Id.* at 1578. For these reasons, we found that 5 U.S.C. § 7701(j)—which provides that an employee's retirement status may not be taken into account in appealability of removal actions—established our jurisdiction over Ms. Mays's case and that her case was not moot. *Id.* at 1581.

The facts of this case fall squarely in line with those in *Mays*: here, as in *Mays*, Mr. Jimenez received proposed, and then final, removal letters and subsequently retired in light of that removal. Specifically, the V.A. sent

Mr. Jimenez a proposed removal letter on December 23, 2011, to which Mr. Jimenez responded both in writing and orally. Ultimately, the V.A. decided to remove Mr. Jimenez and informed him with a final removal notice on February 22, 2012. The February 22, 2012 notice indicated that, "[i]n connection with the letter of December 23, 2011, in which you were given advance notice of your proposed removal, *a decision has been made to remove you from federal employment* effective **March 5, 2012** based on the following reasons." S.A. 103 (italicization added). The notice also expressly informed Mr. Jimenez of his right to appeal: "You may appeal this action to the Merit Systems Protection Board (MSPB) or []under the grievance procedure (non-bargain) or under the negotiated grievance procedure . . . ." *Id.* Moreover, just like in *Mays*, the remarks section in Mr. Jimenez's SF-50 retirement form indicated that he "retired after receiving written notice on 02/22/2012 of decision to separate for endangering patient health and safety of others." S.A. 119. Thus, Mr. Jimenez's retirement did not moot his claim. *See Mays*, 27 F.3d at 1580–81.

In fact, during prehearing conferences, the Board determined that Mr. Jimenez "retired on March 2, 2012, because the agency had issued a decision to remove him on February 22, 2012, effective March 5, 2012." S.A. 241–42. The Board cited *Mays*—under no objection by the Government, as it concedes—to hold that the February 22 removal notice constituted an appealable action that conferred jurisdiction in this case. *Id.* The Government now unconvincingly argues in the abstract that this case is moot without either addressing the Board's specific holding on the issue or responding to its reliance on *Mays* in reaching that holding. We conclude that the Board's holding was correct and that jurisdiction exists in this case.

Having concluded that jurisdiction is proper, we address the merits of Mr. Jimenez's appeal.

II.

Actions brought under the WPA operate in a burden-shifting framework. The initial burden lies with the employee to show "by a preponderance of the evidence that he or she made a protected disclosure under § 2302(b)(8) that was a contributing factor to the employee's termination." *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012) (citing 5 U.S.C. § 1221(e)). "If the employee establishes this prima facie case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure,'" *id.* (quoting § 1221(e)), which we sometimes refer to as a showing of "independent causation," *see, e.g.*, *Kewley v. Department of Health & Human Services*, 153 F.3d 1357, 1364 (Fed. Cir. 1998).

In evaluating whether the Government has successfully rebutted an employee's prima facie case by demonstrating independent causation, this court has approved of the use of three, albeit nonexclusive, factors described in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999):

> [1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

By statute, we set aside the judgment of the Board if the decision is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by

substantial evidence." 5 U.S.C. § 7703(c); *see also Whitmore*, 680 F.3d at 1366.

The Government does not dispute the Board's threshold determination that Mr. Jimenez made a prima facie showing that his disclosures were protected by the WPA and that they contributed to his removal. This finding shifted the burden to the Government to show independent causation before the Board. Thus, the main issue before us is whether substantial evidence supports the Board's determination that the Government showed independent causation by clear and convincing evidence. We conclude that it does.

The Board relied on the testimony—supported by contemporaneous documents—of multiple witnesses involved in the spill incident, the investigation, and Mr. Jimenez's removal procedure. The Board found the Government's witness testimony credible, but Mr. Jimenez argues that this evidence is weak because it came from unreliable witnesses. But the Board's "credibility determinations are 'virtually unreviewable' at this level." *Chambers v. Dep't of Interior*, 515 F.3d 1362, 1370 (Fed. Cir. 2008) (quoting *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986)). Further, the Board discredited Mr. Jimenez's contradictory testimony that he actually reported the spill because "he provided no evidence to support that claim." *Board Op.*, 2016 WL 602580, S.A. 47. On appeal, Mr. Jimenez now argues for the first time that there is no proof that a spill of radiological material actually occurred. Appellant Br. Amendment 7–8. Not only does Mr. Jimenez raise this argument too late, it is also flatly contradicted by his multiple earlier admissions that a radiological spill did, in fact, occur. *See, e.g.*, S.A. 475:16–476:10 (hearing testimony of Mr. Jimenez that tubing became separated from patient and "squirted the medicine out"); S.A. 99–100 (Mr. Jimenez's representative declaring that "there was a spill" and describing a different spill as a "spill similar to what

Mr. Jimenez experienced" during oral response to V.A.'s proposed removal action).

Mr. Jimenez also argues that the Board did not properly consider the decisionmaker's retaliatory motive under *Carr* factor two. We disagree. The Board heard the decisionmaker's testimony that "the reasons set out in the proposal notice, not the appellant's whistleblowing activities, were the reasons for his decision to propose the appellant's removal" and found it to be credible. *Board Op.*, 2016 WL 602580, S.A. 46. Again, the Board credited this testimony, and such "credibility determinations are 'virtually unreviewable' at this level." *Chambers*, 515 F.3d at 1370 (quoting *Hambsch*, 796 F.2d at 436). Mr. Jimenez also argues that the Board failed to properly consider his evidence that other similarly situated non-whistleblowers had not been removed, which goes to *Carr* factor three. The Board did address Mr. Jimenez's argument, but found it unpersuasive given that Mr. Jimenez had not shown that these other employees had his same disciplinary record, which included multiple violations for similar offenses. And, indeed, the Board's finding is consistent with the deciding official's testimony that Mr. Jimenez's removal was an instance of "progressive discipline." S.A. 375:21–376:2. Thus, considering the record as a whole, we conclude that there is substantial evidence from which the Board could have concluded that the Government proved independent causation by clear and convincing evidence. Accordingly, we do not disturb the Board's determination.

Mr. Jimenez additionally contends that Board erred when it did not allow Dr. Tuhin Chaudhuri, an expert in Nuclear Engineering, to testify at the hearing. Mr. Jimenez sought to have Mr. Chaudhuri testify that the Government's testimony was "inaccurate . . . medically and scientifically." Appellant Br. 15. The Board concluded that the testimony of Dr. Chaudhuri would be "irrelevant and/or unduly repetitious." S.A. 241. We

review the Board's decision for abuse of discretion. *Veneziano v. Dep't of Energy*, 189 F.3d 1363, 1369 (Fed. Cir. 1999) (citing *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988)).

We agree with the Board that Dr. Chaudhuri's testimony would have been irrelevant because it would not bear on whether Mr. Jimenez spilled a radioactive substance and failed to report it to his superiors. Mr. Jimenez has not presented an argument explaining why the Board abused its discretion in finding this testimony irrelevant. Accordingly, we conclude that the Board did not abuse its discretion in refusing this testimony.

We have considered Mr. Jimenez's remaining arguments, including those relating to alleged incidents that occurred after his proposed removal, and find them unpersuasive. For the foregoing reasons, we conclude that this case is not moot, but that the Board's ultimate decision is supported by substantial evidence. We therefore affirm.

## AFFIRMED

### COSTS

No costs.